841 A.2d 465 (2004)
366 N.J. Super. 380
Stanley CARROLL, Plaintiff-Appellant,
v.
NEW JERSEY TRANSIT, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 15, 2003.
Decided February 9, 2004.
*466 Philip J. Maenza, East Hanover, attorney for appellant.
Peter C. Harvey, Attorney General of New Jersey, attorney for respondent (Michael J. Haas, Assistant Attorney General, of counsel; Karen L. Jordan, Deputy Attorney General, on the brief).
Before Judges HAVEY, FALL and PARRILLO.
*467 The opinion of the court was delivered by PARRILLO, J.A.D.
In this slip-and-fall Tort Claims action, plaintiff Stanley Carroll appeals from an order entered in the Law Division on January 10, 2003, granting summary judgment in favor of defendant New Jersey Transit Corp. We affirm.
Because this appeal arises from the grant of a motion for summary judgment, "we must view the facts that may be inferred from the pleadings and discovery in the light most favorable to plaintiff[]." Strawn v. Canuso, 140 N.J. 43, 48, 657 A.2d 420 (1995). So viewed, they are as follows.
On September 14, 1999, plaintiff was walking down the steps of the Newark City Subway at the Davenport Avenue Station in Newark when he slipped on a foreign substance identified as dog feces and fell down the steps, fracturing his ankle. Defendant leases and operates the Newark City Subway, including the steps where the accident occurred. At the time, plaintiff was walking down the steps with, and talking to, his brother-in-law, Edward O'Connor, as they were returning home after having lunch together. Plaintiff did not see anything on the steps, however, before he fell. Because no one was in the area at the time of the fall, the two men waited for about twenty minutes in the park near the subway station until plaintiff's pain subsided, at which time O'Connor helped plaintiff walk to a fire house around the corner where plaintiff was then transported by ambulance to a hospital.
In answers to interrogatories on March 12, 2002, plaintiff certified that defendant's employee, a maintenance worker, was in the area sweeping up garbage at the time of the accident. This employee, however, was never identified, and O'Connor, since deceased, never mentioned any such person in his written statement of November 24, 1999. Moreover, three months after he certified his interrogatory answers, plaintiff testified on deposition on June 19, 2002, that he did not know of anyone other than his brother-in-law who saw him fall; that he did not know of anyone else who was in the area at the time of his fall; and that he did not report the accident to New Jersey Transit when it happened because "[t]here wasn't anyone there." O'Connor essentially confirmed this account when he stated that they had to walk to the fire station to get help even though plaintiff had a painfully fractured ankle. There was also evidence that a New Jersey Transit serviceman routinely inspects the subway station once a day, between 7:00 a.m. and 9:00 a.m.
Plaintiff filed timely notice of the injury and his claim in accordance with the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 12-3, and filed a complaint in the Law Division against New Jersey Transit, the City of Newark and fictitiously-named defendants on September 12, 2001.[1] After the completion of discovery, defendant moved for summary judgment, arguing that the evidence did not establish dangerous condition liability under the Tort Claims Act because: (1) there was no substantial risk of harm to a user with due care, who would have used the handrail and paid attention to where he was walking; (2) defendant did not have actual or constructive notice of the dog feces on the step; and (3) its actions or inaction to prevent the possibility of that condition were not palpably unreasonable. Plaintiff countered that: (1) the feces presented a *468 substantial risk of injury to a person using the steps with due care; (2) his interrogatory answer supported an inference of notice; and (3) defendant's failure to clean up the feces was palpably unreasonable. The motion judge found that the "dog droppings could be construed as a dangerous condition," but granted summary judgment dismissal of plaintiff's complaint because there was neither actual nor constructive notice of the claimed defect. He reasoned:
I think the real focus has to come on the question of notice. There's no question there's no actual notice. The question is whether there is constructive [notice] assuming that there was ... some type of a maintenance worker cleaning or sweeping up in the area. Certainly, there's no indication that the worker had been in the area where the dog dropping was before the accident happened because, obviously, the stairway is not the only portion of the subway station. It certainly has a platform area which undoubtedly would have more area to it than the stairway. The real problem I have from the plaintiff's perspective is that there's just absolutely no evidence to indicate how long the substance was on the stairway. I mean, for all we know, something may have happened something like five minutes or two minutes before the accident itself occurred. But I think because there's just no indication of how long it was there, there's no basis for which a reasonable fact-finder could find constructive notice. And I think with that, the plaintiff's cause of action must fail. So I will grant the motion for summary judgment.
On appeal, plaintiff argues, as he did before the motion judge, that there was sufficient evidence of notice of the dangerous condition to withstand a summary judgment dismissal of his action. He also argues alternatively, and for the first time on appeal, that he was relieved of the burden of proving notice because defendant's mode of operation, as a matter of probability, created a substantial risk of injury and that both defendant's maintenance policy and manner of inspection on this occasion were "palpably unreasonable." We disagree.
N.J.S.A. 59:4-2 circumscribes the liability of a public entity for an injury caused by a dangerous condition on its property. Its liability provisions state:
A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.
[N.J.S.A. 59:4-2(a) and (b).]
This provision places the burden squarely on the plaintiff to prove each of its elements, Muhammad v. New Jersey Transit, 176 N.J. 185, 194, 821 A.2d 1148 (2003); Norris v. Borough of Leonia, 160 N.J. 427, 446, 734 A.2d 762 (1999), including that a public entity which had actual or constructive notice acted or failed to act to prevent injury in a way that was palpably unreasonable. N.J.S.A. 59:4-2; Muhammad, supra, 176 N.J. at 195, 821 A.2d 1148.
*469 The notice provisions of subsection b. of N.J.S.A. 59:4-2 and N.J.S.A. 59:4-3 are not applicable "where public employees through neglect or wrongful act or omission within the scope of their employment create a dangerous condition." Atalese v. Long Beach Township, 365 N.J.Super. 1, 5, 837 A.2d 1115 (App.Div.2003). In Atalese, the plaintiff's case instead rested on subsection a. of N.J.S.A. 59:4-2 because she alleged that the defendant township's public works department employees created the dangerous condition by negligently installing a storm sewer extension resulting in a three-quarter inch difference in elevation between the area of the city's bike path where the plaintiff tripped and fell and other areas of the bike path. Here, in contrast, plaintiff makes no claim of any physical defect in the property itself, much less one caused by defendant's employees as opposed to outside forces. As such, plaintiff's theory of liability is confined to subsection b. of N.J.S.A. 59:4-2.
In order to establish that a public entity had actual notice of a dangerous condition for purposes of N.J.S.A. 59:4-2, the public entity must have "had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). Alternatively, a public entity may be charged with constructive notice if plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. N.J.S.A. 59:4-3(b). See also Norris, supra, 160 N.J. at 447, 734 A.2d 762. Contrary to his contention, plaintiff has not established either actual or constructive notice here.
It is undisputed that there is no proof that defendant had actual knowledge of the alleged dangerous condition at the time of the accident. Indeed, plaintiff does not even contend to the contrary. Rather, in support of his claim of constructive notice, plaintiff simply points to his interrogatory answer stating that a maintenance worker was "in the area sweeping up papers." However, this assertion directly contradicts plaintiff's sworn deposition testimony three months later denying that anyone other than his brother-in-law was present at the scene. It also contradicts his brother-in-law's confirmatory account, as well as the fact that both men had to walk to the nearby fire station to get help, presumably because no one was present to offer any aid at the subway station. Under the circumstances, where plaintiff's contradiction is unexplained and unqualified, he "cannot create an issue of fact simply by raising arguments contradicting his own prior statements and representations." Mosior v. Ins. Co. of N. Am., 193 N.J.Super. 190, 195, 473 A.2d 86 (App.Div.1984). See also Shelcusky v. Garjulio, 172 N.J. 185, 201-02, 797 A.2d 138 (2002) (and cases cited therein); Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir., 1975).
But even assuming the presence of defendant's employee in the area, we find this fact inadequate to satisfy the notice requirement of N.J.S.A. 59:4-3. In the first place, there was no evidence of how long the dog feces was on the steps. Therefore, plaintiff could not even meet the fundamental requirement of constructive notice under N.J.S.A. 59:4-3(b), namely that the condition could have existed for such a period of time that the public entity should have discovered it. The dog feces could have been there "hours, minutes or seconds before the accident," one of the reasons we found the proofs inadequate to establish notice in Grzanka v. Pfeifer, 301 N.J.Super. 563, 574, 694 A.2d 295 (App. *470 Div.1997), certif. denied, 154 N.J. 607, 713 A.2d 487 (1998). Moreover, the record is devoid of any proof as to where the maintenance worker was located in relation to the steps, or where he was prior to plaintiff's arrival at the subway station. Equally significant is the absence of any evidence of complaints from the public about the presence of dog feces or other slippery substances on the station steps, or a history of similar incidents, that may have served to establish actual or constructive notice to defendant of that condition. See, e.g., Chatman v. Hall, 128 N.J. 394, 418, 608 A.2d 263 (1992); Saldana v. DiMedio, 275 N.J.Super. 488, 504, 646 A.2d 522 (App.Div.1994). Thus, even if we were to assume the presence of a maintenance worker at the scene, without more it would be of no evidential value, much less create a genuine issue of material fact sufficient to defeat defendant's summary judgment motion.
Plaintiff's remaining arguments were not presented to the motion judge and are raised for the first time on appeal. Here, plaintiff argues that defendant's mode of operationnamely, inspecting only once a day and sweeping the platform prior to the stepswas "patently unreasonable" and likely created the dangerous condition, therefore relieving him of his burden to otherwise prove actual or constructive notice on the part of defendant. Because these arguments were never raised in the trial court, we need not consider them here. Nieder v. Royal Indemnity Ins. Co., 62 N.J. 229, 234-35, 300 A.2d 142 (1973); Simonelli v. Chiarolanza, 355 N.J.Super. 380, 385, 810 A.2d 604 (App. Div.2002), certif. denied, 178 N.J. 28, 834 A.2d 402 (2003). But even assuming they are cognizable on appeal, we nevertheless deem them to be without merit.
The "mode of operation" rule does not apply here for several reasons. The rule is a very limited exception to the traditional rules of business premises liability affording the plaintiff an inference of negligence where the proprietor of a business could reasonably anticipate that hazardous conditions would regularly arise simply from the operator's method or manner of doing business. Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 818 A.2d 314 (2003). In other words, in such a situation, the plaintiff need not prove notice, and the defendant is obligated to come forward with rebutting proof that it had taken prudent and reasonable steps to avoid the hazardous condition. Id. at 563-64, 818 A.2d 314.
We are aware of no precedent, and plaintiff points to none, that would relieve a plaintiff, in these circumstances, from his or her burden of proving actual or constructive notice on the part of the public entity. N.J.S.A. 59:4-2, -3. See also Rocco v. New Jersey Transit Rail Operations, 330 N.J.Super. 320, 339-40, 749 A.2d 868 (App.Div.2000). Simply put, the mode of operation rule has no application to a public entity whose liability for maintaining a dangerous condition is rigidly confined to situations where, among other requirements, the public entity either created the hazardous condition through a negligent or wrongful act or omission of its employee, or was actually or constructively aware of its existence.
In any event, there is absolutely no evidence in the record to suggest that, as a matter of probability, the presence of dog feces on the subway steps was "likely to occur as a result of the nature of the [defendant's] business, the property's condition, or a demonstrable pattern of conduct or incidents." Nisivoccia v. Glass Gardens, Inc., supra, 175 N.J. at 563, 818 A.2d 314. See also Craggan v. IKEA USA, 332 N.J.Super. 53, 61, 752 A.2d 819 (App.Div.2000); O'Shea v. K-Mart Corp., *471 304 N.J.Super. 489, 492-93, 701 A.2d 475 (App.Div.1997). Thus, even if the "mode of operation" doctrine were applicable to public entities to accord a plaintiff an inference of negligence, we hold that it is simply not implicated on the particular facts of this case.
Finally, to the extent this element of dangerous condition liability need even be reached here, we find no proof of "palpable unreasonableness" to warrant jury consideration. The proposition that it was palpably unreasonable for the worker to sweep the platform before the steps is completely unsupported by any evidence in this record. So too is the similar labeling of defendant's inspection routine. Plaintiff presented no proofs on the standard of care for inspections of subway or rail stations. And, as previously noted, the record is devoid of any evidence of a history of similar incidents or complaints, or a demonstrable pattern of conduct or practice to suggest the need for a more frequent inspection schedule. As such, plaintiff's claims of palpable unreasonableness presented no jury question. See, e.g., Muhammad, supra, 176 N.J. at 200, 821 A.2d 1148; Maslo v. City of Jersey City, 346 N.J.Super. 346, 349, 787 A.2d 963 (App. Div.2002).
Because plaintiff cannot establish that defendant had actual or constructive notice of the "dangerous condition" of its property, even taking into account plaintiff's inconsistent interrogatory answer, we affirm the summary judgment in favor of defendant. Although we need not reach the remaining issues, we nevertheless conclude that the mode of operation rule does not apply here to accord plaintiff an inference of negligence to withstand defendant's summary judgment motion; and further determine that, in any event, nothing in defendant's mode of operation created the hazard of which plaintiff complains.
Affirmed.
NOTES
[1] The complaint was dismissed, without objection, as to the City of Newark by orders entered on October 25, 2002 and January 2, 2003.