**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4387-18

BRIAN KRUZEL,

     Plaintiff-Appellant,

v.

CITY OF NEWARK, the
Department of Engineering, the
Department of Water and Sewer,
the Department of Neighborhood
and Recreational Services and the
Department of Police,

     Defendant-Respondent,

and

COUNTY OF ESSEX, the
Department of Public Works, the
Utilities Authority, and the
Improvement Authority,

     Defendant,

and

CITY OF NEWARK,

     Third-Party Plaintiff,

v.

NEWARK HOUSING AUTHORITY,

    Third-Party Defendant.

_____

Argued January 26, 2021 – Decided March 3, 2021

Before Judges Yannotti, Haas, and Mawla.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3974-16.

Marc B. Schuley argued the cause for appellant (Montgomery Fetten, attorneys; Glenn A. Montgomery, on the briefs).

Azeem M. Chaudry, Assistant Corporation Counsel, argued the cause for respondent (Kenyatta K. Stewart, Corporation Counsel, attorney; Azeem M. Chaudry and Gary S. Lipshutz, Assistant Corporation Counsel, on the brief).

PER CURIAM

Plaintiff appeals from an order entered by the Law Division on May 10, 2019, granting summary judgment in favor of defendant, City of Newark (City). We affirm.

## I.

On September 18, 2015, plaintiff was performing his duties as a member of the New Jersey State Police within the City. He was a passenger in a motor

vehicle, and unbeknownst to plaintiff, the vehicle was parked next to an uncovered manhole on a street near the intersection of Van Duyne Street and Frelinghuysen Avenue. The street runs through the Newark Housing Authority's (NHA) Seth Boyden Housing Complex (SBHC), which was vacant and abandoned at the time. Plaintiff allegedly exited the vehicle and fell into the uncovered manhole, causing him to sustain injuries to his right ankle.

On October 19, 2015, plaintiff filed a notice of claim with the City pursuant to the New Jersey Tort Claims Act (TCA or the Act), N.J.S.A. 59:1-1 to 12-3. Thereafter, plaintiff filed a complaint naming as defendants the City and the County of Essex, along with various subdivisions of these public entities.[1] Plaintiff asserted claims of negligence.

In June 2016, the City's attorney informed plaintiff's counsel that the property where the subject manhole was located was owned and controlled by the NHA. Plaintiff filed a motion for leave to serve a late notice of claim upon the NHA. By order entered on July 22, 2016, the trial court denied the motion.

---

[1] Plaintiff named the City's Department of Engineering, Department of Water and Sewer, Department of Neighborhood and Recreational Services, and the Police Department. He also named the County's Department of Public Works, Utilities Authority, and Improvement Authority.

We thereafter granted plaintiff's motion for leave to appeal and, while the appeal was pending, the City filed a third-party complaint against the NHA for apportionment and discovery purposes only. In its answer to the third-party complaint, the NHA admitted it owned the SBHC and Seth Boyden Terrace, a private road within the SBHC. We later affirmed the trial court's order of July 22, 2016. Kruzel v. City of Newark, No. A-5231-15 (App. Div. Dec. 19, 2017).

In March 2019, the City filed a motion for summary judgment. The City asserted that its maps show that the open manhole at issue was located on Seth Boyden Terrace. The City maintained that the manhole was not within a municipal roadway, and there was no evidence that the City had any control or responsibility for Seth Boyden Terrace or the SBHC. The City also argued that it did not have actual or constructed notice of the alleged dangerous condition, and that plaintiff did not suffer injuries sufficient to warrant recovery under N.J.S.A. 59: 9-2(d).

Plaintiff opposed the motion. Plaintiff argued that the motion was improper because it was filed within thirty days of the scheduled trial date, which is contrary to Rule 4:46-1. He also argued there are genuine issues of material fact that preclude summary judgment in favor of the City, and that he presented sufficient evidence to support his claim for damages under the Act.

A-4387-18

The parties submitted answers to interrogatories, documents, and responses to requests for admissions. The parties also provided the court with transcripts of depositions taken in June and September 2018.

Emanuel Foster was the NHA's Director of Asset Management in 2015. He testified that the NHA has twenty-four rental "communities." The SBHC is one of the NHA's properties. Foster said the NHA learned of the open manhole on September 21, 2015.

Kenneth Hubbard was the Supervisor of the City's Sewer Department in 2015. He testified that in September 2015, he responded to a complaint of a missing manhole cover at the SBHC. He stated that when he arrived at the site of the incident, he determined that it was located on private property within the "Seth Boyden Projects."

Hubbard also said that when he first arrived at the complex, some persons directed him to an open manhole cover. He notified the dispatch office that the manhole was located on NHA property. He stated that the Sewer Department does not "address anything within private property." Hubbard then left the scene.

Kareem Adeem testified that in September 2015, he was employed as the assistant director for the City's Department of Water and Sewer. He said that on

September 18, 2015, his supervisor Mike Gelin was informed of the accident at SBHC. He said the accident occurred on NHA property and that the City does not maintain any utilities on NHA property or perform other services at those locations, such as snow removal or street sweeping.

Juba Dowdell said that in September 2015, he was employed by the City as the Deputy Coordinator of the Office of Emergency Management, Homeland Security. He testified that shortly after the incident in September 2015, he was informed that one of his "guys" had fallen down a manhole. He went to the site, and noted that it was an abandoned housing complex, with "[e]xtreme illegal dumping." He said local citizens were entering the abandoned housing complex, taking metal, and selling it.

Dowdell further testified that he returned to the office and notified the NHA "what was going on." He said he wanted to "get the ball rolling" so that the NHA "would clean up the site and secure it." Dowdell was told to call the Water Department and he was informed that the accident site belonged to the NHA.

Dowdell stated that "[i]t was obvious" that the site was NHA property. He testified, that "[e]verybody knows that [Seth Boyden] belongs to" the NHA. However, Dowdell then stated that his "memory" was "coming back." He said

6

the manhole was across the street, and it was not in the Seth Boyden complex. He asked the attorney who was questioning him whether that was "correct."

Richard Zieser, Deputy Chief of the City's Fire Division, testified that he was "not sure" who owned housing projects like the SBHC. He noted there were several of such projects in the City. He stated that he considered the projects to be "city owned as compared to a privately-owned complex or buildings."

The record shows that after plaintiff's fall, the City took certain measures to address the open manhole. In its answers to plaintiff's interrogatories, the City stated that it installed a temporary cover over the manhole, but it did not indicate the date on which it did so or who installed the cover.

Adeem testified that Dowdell's initial instructions were to "[p]ut a drum or something" around the manhole, and to then notify the NHA. He said the manhole was on the NHA's property and its maintenance was the NHA's responsibility.

He testified, however, that the City's policy is that when an employee sees an uncovered manhole that no one is attending to, he or she must secure it—by placing a cone, drum, caution tape or steel plate around it—and then notify the owner. He stated that "[y]ou just can't leave the hole open."

Zieser testified that, after June 5, 2016, he worked with the City's special operations division to cover the manhole with barriers and make it temporarily safe until the NHA could implement a permanent solution. He testified that he did not know who would be responsible for implementing the permanent solution. He said that, to the best of his knowledge, the NHA implemented the permanent solution, which was to weld steel over all manholes in the complex.

Moreover, on June 5, 2016, one of the City's firefighters fell into an uncovered manhole while responding to a fire at the SBHC. On that date, personnel from the City's Department of Public Safety, Fire Division, inspected the complex and found that numerous manhole covers were still missing.

Zieser wrote a memorandum on the same day in which he noted an "extremely dangerous condition" at the SBHC. He characterized the uncovered manholes as "mantraps" because of the overgrown vegetation and debris in the complex.

Dowdell also wrote a memorandum dated June 10, 2016, regarding the Department of Public Safety's investigation of the housing complex that took place several days earlier. He wrote that he informed Foster that the condition at the housing complex "pose[d] a public safety hazard to the general public at large and [protective measures] must be instituted immediately. [Foster] didn't

disagree." Dowdell stated that the NHA took full responsibility for the clean-up and security of the site.

On May 10, 2019, Judge Bridget A. Stecher heard oral argument and placed her decision on the record. The judge noted that under the Act, "public property" is defined as property owned or controlled by a public entity. The judge noted that the property at issue is owned by the NHA, and plaintiff failed to present sufficient evidence to show that the City exercised any control over the property before the accident.

The judge noted that, while the City had taken certain remedial actions after plaintiff's accident, it did so because it had actual notice of the dangerous condition at that time and was obligated to do so to avoid liability under the TCA. The judge stated that the City did not treat the property as its own, for public purposes, and these remedial measures do not demonstrate that it controlled the property prior to the incident.

The judge memorialized her decision in an order dated May 10, 2019. Plaintiff's appeal followed. We note that at some point, plaintiff's claims against the County were dismissed. In addition, on August 29, 2019, the trial court entered a consent order dismissing plaintiff's claims against the City's Departments of Engineering, Water and Sewer, Neighborhood and Recreational

Services, and Police, as well as the City's third-party complaint against the NHA, with prejudice.

## II.

On appeal, plaintiff argues that the trial court erred by granting the City's motion for summary judgment. Plaintiff contends that the City must be deemed to have had constructive notice of the alleged dangerous condition and it acted in a palpably unreasonable manner when it delegated its statutory duty to safely maintain the municipal utility infrastructure to the NHA.

When reviewing an order granting or denying summary judgment, we apply the standard under Rule 4:46-2(c) that the trial court applies when ruling on the motion. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment should be granted when the evidence before the court on the motion "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The motion court must determine facts in the light most favorable to the party opposing summary judgment. Igdalev, 225 N.J. at 479. However, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of

10

material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Thus, the trial court should grant summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The TCA provides in relevant part:

A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that

[1] the property was in dangerous condition at the time of the injury,

[2] that the injury was proximately caused by the dangerous condition,

[3] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred,

[4] and that either:

(a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

(b) a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition[, and]

11

[5] Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

Thus, N.J.S.A. 59:4-2 imposes potential liability on a public entity only for injury on property of the public entity. "Public property" is defined in the Act as "real or personal property owned or controlled by the public entity . . . ." N.J.S.A. 59:4-1(c). Public property "does not simply mean any property falling within the geographical boundaries of a municipality." Christmas v. Newark, 216 N.J. Super. 393, 398 (App. Div. 1987).

A public entity is not liable for dangerous conditions on the property of others. Dickson v. Twp. of Hamilton, 400 N.J. Super. 189, 197 (App. Div. 2008). Furthermore, in the absence of proof that the public entity owned the property at issue, the plaintiff must demonstrate that the public entity controlled the property. Christmas, 216 N.J. Super. at 397.

It should be noted that a public entity's regulatory control of the property of others is insufficient to establish control under the Act; rather, the entity must exercise "possessory control consistent with property law[.]" Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 183 (2002) (citing Danow v. Penn

12

Cent. Transp. Co., 153 N.J. Super. 597, 603 (Law Div. 1977)). "[P]ossessory control is satisfied where a public entity treats private property as its own by using it for public purposes." Id. at 184.

In Dickson, the State, rather than the Township, owned the roadway on which the plaintiff was injured. 400 N.J. Super. at 197. We held that the Township's protective police patrol of the roadway did not establish possessory control under the TCA. Ibid. Moreover, in Farias v. Twp. of Westfield, 297 N.J. Super. 395, 403 (App. Div. 1997), we rejected the plaintiff's claim that the public entity controlled State-owned property by "incidental acts," such as removing snow and placing trash cans in an area.

Here, plaintiff failed to present sufficient evidence to raise a genuine issue of material fact as to whether the City owned or controlled the property where the alleged dangerous condition was located. It is undisputed that the subject manhole was on property owned by the NHA.

It is well-established that the NHA is an entity that is separate and independent of the City. See English v. Newark Hous. Auth., 138 N.J. Super. 425, 430 (App. Div. 1996). The NHA acknowledged ownership of the property, and its position is consistent with the City's tax map, the City's discovery

13

responses, and the deposition testimony provided by Foster, Hubbard, and Adeem.

In support of its contention that there is a genuine issue of material fact as to whether the City owned or controlled the property, plaintiff relies upon Dowdell's testimony that he observed several manholes when he visited the SBHC on September 21, 2015. He said the manholes were within and outside of the complex. He also stated that "the manhole we're talking about" is on the City's property.

Plaintiff also relies on testimony by Zieser, who stated that the Fire Division "always considered" housing complexes like SBHC to be "city owned as compared to a privately-owned complex or buildings." In addition, plaintiff relies upon Foster's testimony, but Foster said he was not sure whether plaintiff was injured on the NHA's property or the City's property.

This testimony is insufficient as a matter of law to raise a genuine issue of material fact as to ownership of the property at issue. There is no indication that Dowdell or Zieser had the knowledge or expertise to offer an opinion as to ownership of the property. Moreover, Dowdell offered conflicting testimony on the issue, and Foster said he did not know.

A-4387-18

Plaintiff also contends the evidence showing that the City took post-accident remedial actions regarding the open manhole was sufficient to raise a genuine issue of material fact as to the City's alleged control of the property. However, as the City points out, its post-accident efforts to secure the open manhole does not create a presumption or inference of control.

As noted, control for purposes of liability for a dangerous condition of public property under the TCA requires proof that the public entity treated the property of another "as its own." Posey, 171 N.J. at 184. Incidental use, as evidenced by the remedial measures taken here, are insufficient to establish control for purposes of the TCA. Farias, 297 N.J. Super. at 403.

In this regard, we note a public entity may be liable under N.J.S.A. 59:4-4 for failing to warn the public about a dangerous condition on the property of another if the public entity had actual notice of that condition. Debonis v. Orange Quarry Co., 233 N.J. Super. 156, 171 (App. Div. 1989). Here, the record shows that the City took remedial measures after plaintiff's accident. It did so to protect its firefighters and members of the public from a dangerous condition on the property. In doing so, the City is not exercising "control" of the property for purposes of liability under N.J.S.A. 59:4-2.

15

Here, the trial court did not err by finding that there was no genuine issue of material fact as to whether the City owned or controlled the subject property. The evidence shows that the NHA is the owner of the property where the open manhole was located, and plaintiff failed to present sufficient evidence to show that the City controlled the property at issue. The trial court correctly found that, for these reasons, the City was entitled to summary judgment.

III.

The City contends that even if there was a genuine issue of material fact as to whether it owned or controlled the property, it was entitled to summary judgment because before plaintiff's accident, the City did not have actual or constructive notice of the alleged dangerous condition. Plaintiff argues, however, that the evidence shows the City had constructed notice of the dangerous condition of the "municipal utility infrastructure" within the SBHC.

Plaintiff contends the testimony of Dowdell and Zieser shows that the City was aware that the SBHC was abandoned property and the site of extensive illegal dumping and over-grown vegetation. According to plaintiff, vagabonds were sheltering in the complex, which created a hazard to the public. Plaintiff states that Dowdell's testimony indicated that local citizens and others were entering the complex, taking metal, and selling it.

16

The TCA provides in N.J.S.A. 59:4-3 that:

> (a) A public entity shall be deemed to have actual notice of a dangerous condition within the meaning of subsection b. of [N.J.S.A.] 59:4-2 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.

> (b) A public entity shall be deemed to have constructive notice of a dangerous condition within the meaning of subsection b. of [N.J.S.A.] 59:4-2 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.

We are convinced that, even if we were to conclude that plaintiff presented sufficient evidence to show that the City owned or controlled the property where plaintiff was injured, he failed to raise a genuine issue of material fact as to whether the City had actual or constructive notice of the alleged dangerous condition. There is nothing in the record that shows the City had actual knowledge of the open manhole in which plaintiff allegedly fell.

In addition, plaintiff failed to show that the condition "existed for such a period of time and was of such an obvious nature" that the City, "in the exercise of due care, should have discovered the condition and its dangerous character." Ibid. Plaintiff presented no evidence showing that the City knew, before the accident, there were open manholes in the SBHC or that the City knew about the

specific open manhole that allegedly caused plaintiff's injury. Plaintiff also presented no evidence showing that the City had received, before the accident, any general complaints about the alleged dangerous conditions at the SBHC, or any specific complaints about the open manhole into which plaintiff fell.

Although Dowdell testified that persons engaged in illegal dumping in the area and took metal from the property, he made these observations during a site visit that occurred after plaintiff's accident. Dowdell stated that this visit was the first time he had been at the complex in years. Similarly, while Zieser testified that open manholes in the housing complex were "mantraps," he observed the open manholes when he investigated the site in June 2016, which was months after plaintiff's accident.

In Carroll v. N.J. Transit, 366 N.J. Super. 380, 384 (App. Div. 2004), the plaintiff slipped on dog feces on the steps of a subway station. The plaintiff claimed a maintenance worker had been sweeping up garbage in the area at the time of the accident. Ibid. We held that, even assuming the defendant's employee was in the area, the plaintiff had not met the "fundamental requirement of constructive notice under N.J.S.A. 59:4-3(b)." Id. at 388.

We stated that the plaintiff had to show that the condition existed for such a period of time that the defendant should have known of it. Ibid. We noted

that the dog feces could have been on the steps "hours, minutes or seconds before the accident . . . ." Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 574 (App. Div. 1997)). There also was no evidence as to the location of the maintenance worker in relation to the steps, or where he was before the plaintiff arrived at the station. Ibid.

In addition, there was no evidence of any prior complaints from the public about the presence of dog feces or other slippery substances at the location or a history of similar incidents. Id. at 388-89. Plaintiff's proofs regarding the open manhole at SBHC suffer from similar deficiencies.

Moreover, in Patrick ex rel Lint v. City of Elizabeth, 449 N.J. Super. 565, 568 (App. Div. 2017), an eight-year-old child was struck by a motor vehicle while crossing a street near a municipal park, which was located about a block from a public elementary school. An unidentified motorist had stopped to let the children cross the street. Ibid. As they were crossing the street, another motorist passed the stopped car and struck the child. Ibid.

We held that the plaintiff, who brought suit on behalf of the child, failed to present sufficient evidence to establish liability against the City on the ground that the crosswalk constituted a dangerous condition of its public property. Id. at 572-74. We noted that the plaintiff claimed the absence of signage regarding

A-4387-18

the school zone and speed limit, as well as faded crosswalks, combined with increased traffic from a nearby mall, created a dangerous condition. Id. at 572. The plaintiff alleged that the City and its Board of Education knew or should have known of the dangerous condition. Ibid.

We noted, however, that the police reports did not reveal any similar accident in the area, and there were no complaints about the lack of signage at the location of the accident. Id. at 573. We pointed out that a municipality is entitled to immunity under the Act from liability with regard to the exercise of its discretion in selecting the type and location of signs on public streets. Id. 573-74 (citing N.J.S.A. 59:2-3(a)).

This case does not present a claim of immunity; however, like the plaintiff in Patrick, there is no evidence of prior complaints regarding the alleged dangerous condition or accidents related to the open manhole into which plaintiff allegedly fell. As in Patrick, the evidence is insufficient to establish that the City had constructive notice of the alleged dangerous condition at the SBHC.

We therefore conclude that, even assuming the City owned or controlled the subject property at the SBHC, the City was entitled to summary judgment because plaintiff failed to present sufficient evidence to show the City had actual

or constructive notice of the alleged dangerous condition, which is required for liability under N.J.S.A. 59:4-2.

IV.

Plaintiff also argues that N.J.S.A. 48:2-23 and N.J.S.A. 48:3-3 require every public utility to provide safe and adequate service and that the City's water and sewer website outlines its program to maintain its manholes and water and sewer systems. He contends that N.J.S.A. 40:14B-3(8) and -3(9) define "water system" and "sewerage system," respectively, in broad terms, such that manholes and their covers are part of the municipal water and sewer systems.

Plaintiff asserts that, as such, the City's Municipal Utilities Authority is responsible for maintaining all manholes that are part of its contiguous utility infrastructure. He also argues that the City's municipal ordinances designate the curb cock valve as the dividing line—in terms of both ownership and maintenance responsibility—of the municipal water utility system, such that the water main, manholes and covers are parts of the City-owned system.

Plaintiff contends that because the manholes are part of the City's water and sewer systems, they constitute "public property" within the meaning of the TCA. He also argues that, because the City restricts other entities from gaining access to municipal utility infrastructure and uses public property for public

21

purposes, this constitutes "control" within the meaning of the TCA. He therefore contends that the open manhole at the SBHC was a "dangerous condition" within the definition of the TCA.

Plaintiff raises these issues for the first time on appeal. It is well-settled that an appellate court need not consider arguments that a party failed to raise in the trial court, when the party had an opportunity to do so, "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

Here, the issue of the City's alleged responsibility for an uncovered manhole cover at the SBHC under the statutes cited by plaintiff does not constitute a matter of genuine public interest. The issue also has no bearing on the trial court's jurisdiction. Moreover, plaintiff had the opportunity to present these arguments in the trial court and failed to do so.

Furthermore, the issues raise issues of fact, and the City did not have the opportunity to conduct discovery on these claims. The record before us does not provide a sufficient basis to address these issues. We therefore decline to address the arguments that plaintiff raises for the first time on appeal.

22

We note, however, that plaintiff's arguments are addressed primarily to the issue of whether the City owned or controlled the property at SBHC where plaintiff allegedly fell. As stated previously, even if we were to conclude that the City owned or controlled the subject property, the City was entitled to summary judgment because plaintiff failed to show the City had actual or constructive notice of the alleged dangerous condition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4387-18