**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0731-22

ROBIN THOMAS,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
DEPARTMENT OF
CORRECTIONS,

    Defendant-Respondent.

_____

Submitted January 17, 2024 – Decided February 15, 2024

Before Judges Rose and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2133-18.

Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys for appellant (Patrick F. Carrigg and Michael A. Pattanite, Jr., on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel and on the brief; Daniel S. Shehata, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Robin Thomas appeals from a September 20, 2022 Law Division order granting defendant State of New Jersey Department of Corrections (DOC) summary judgment and dismissing Thomas's claims alleging violations of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50.

I.

We view the following facts established in the summary judgment record in a light most favorable to Thomas as the non-moving party. See Friedman v. Martinez, 242 N.J. 449, 472 (2020). Employed as a secretarial assistant for the DOC in its Capital Construction Unit (CCU), Thomas and her co-workers were physically assigned to work in the Bates building. In 2000, Thomas was diagnosed with an autoimmune disease. Four years later, because of her autoimmune sequela, Thomas requested a work accommodation for "an area without direct exposure to air conditioning" based upon supporting documentation from her physician.

At the DOC's request, Thomas attended a medical examination with Shari Diamond, D.O. Dr. Diamond confirmed that direct cold air affected Thomas's condition and sitting near an operating air conditioning unit was

2

detrimental. The DOC acknowledged the diagnosis and made a reasonable accommodation, which Thomas found satisfactory. Thomas remained working in Bates when her CCU co-workers were moved to the Colpitts Trailer (Colpitts). As a secretarial support employee, Thomas's work required interaction with her co-workers and using files in Colpitts.

Several years later, the DOC advised Thomas she was required to move to Colpitts with her CCU co-workers. Thomas filed an Americans with Disabilities Act (ADA), 42 U.S.C. § 12101-12117, accommodation request, supported by a physician's letter, seeking to remain in Bates, which the DOC accommodated. Two years later, the DOC again advised Thomas that she would be moved to Colpitts. Thomas filed a second accommodation request with a supporting physician's letter and specifically requested a seventy-five-degree temperature-controlled work environment. She also requested to remain in her private office in Bates.

In 2017, after considering Thomas's request, the DOC advised that she would be moved to a Colpitts office. The DOC had determined the heating and cooling system in Colpitts could maintain the requested temperature. Prior to her move, the DOC had installed two thermostats to maintain the facility's temperature control. The DOC placed a lock system on the thermostat to

3

ensure a seventy-five-degree temperature. Thomas monitored and created a log to memorialize any decrease from the seventy-five-degree temperature, which she provided to the DOC. Co-workers complained about the increased temperature level, but supervisors attempted to ensure her accommodation. Because the night shift occasionally lowered the temperature to conserve energy, a supervisor would often reset the temperature before Thomas arrived in the morning to accommodate Thomas's request.

After Thomas was stationed in Colpitts for some months and found the environment inadequate, the DOC moved her to a semi-private office in Colpitts with a thermostat. However, Thomas reported that the temperature was not maintained at seventy-five degrees. To address the issue, the DOC insulated the vents and air conditioning units and provided Thomas a portable heater to ensure her temperature accommodation.

The New Jersey Office of Public Employees' Occupational Safety and Health (PEOSH) responded to a complaint alleging condition violations and performed an inspection. The PEOSH found there were no Occupational Safety and Health Administration (OSHA) violations. The DOC hired an independent firm, Environmental Connections, to separately evaluate the conditions. In September 2017, Environmental Connections determined no

4

violations occurred but recommended the DOC address elevated carbon monoxide levels that were "well below the OSHA" requirements.

In March 2018, a new ADA coordinator for the DOC advised Thomas's supervisor other office options would be explored to accommodate Thomas. The DOC relocated Thomas to an available office in the Radio Maintenance Control Unit (Unit). After a walk-through, Thomas consented to move to the private office that had a window and thermostat. Thomas thereafter determined the space was unsuitable because her workspace was near an electrical panel. The DOC moved furniture in the room to alleviate any safety hazards.

In October 2018, Thomas filed a complaint alleging LAD claims for: a hostile work environment; failure to accommodate; vicarious liability; and equitable relief. Defendant moved to dismiss in lieu of an answer, which the motion judge denied. Defendant filed an answer.

At the close of discovery in April 2022, the DOC moved for summary judgment, arguing Thomas failed to demonstrate a prima facie LAD claim. After argument, the motion judge issued an oral decision and entered an order granting the DOC summary judgment. The judge found: "no genuine issues of material fact that enable any reasonable juror to conclude that the [D]OC

A-0731-22

was anything other than engaging fully in good faith and interactive dialogue as required by the [LAD] and [wa]s continuing to try to seek a reasonable accommodation for [Thomas]'s medical condition." The judge reasoned the "uncontroverted motion record show[ed] time after time when problems developed with proposed reasonable accommodations that the [DOC] was willing to tweak accommodations, to fine tune." The judge determined the DOC was interactive because it "did not set any line of demarcation with respect to the interactive process and showed a willingness . . . to continue to respond to additional information and additional requests for reasonable accommodation." He found "[t]he case law [wa]s clear that reasonable accommodation d[id] not necessarily mean accommodation that the particular plaintiff or litigant [wa]s seeking and f[ound] to be ideal."

On appeal, Thomas only challenges the summary judgment dismissal of her LAD claim for failure to accommodate. Thomas argues material issues of fact exist and the judge incorrectly failed to consider that: she was able to perform her essential job responsibilities from the Bates building apart from her co-workers; the DOC "utilized a completely different process when [it] moved [her] to Colpitts"; the accommodations provided in Colpitts were deficient and the Unit accommodation was irrelevant; any effect her

6

accommodation had on other employees was irrelevant; her OSHA complaint was irrelevant; and the DOC's ultimate decision to move her to the Unit was significant.

## II.

We review a trial court's summary judgment decision de novo, "applying the same standard used by the trial court" under Rule 4:46-2(c). Samolyk v. Berthe, 251 N.J. 73, 78 (2022). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman, 242 N.J. at 472 (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). To rule on summary judgment, a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div.

A-0731-22

2013) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)).

"A dispute of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Gayles by Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 22 (App. Div. 2021) (quoting Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017)). "Rule 4:46-2(c)'s 'genuine issue [of] material fact' standard mandates that the opposing party do more than 'point[] to any fact in dispute' in order to defeat summary judgment." Globe Motor Co., 225 N.J. at 479 (alterations in original) (first quoting R. 4:46-2(c); and then quoting Brill, 142 N.J. at 529). Insubstantial arguments based on assumptions or speculation are not enough to overcome summary judgment. Brill, 142 N.J. at 529; see also Dickson v. Cmty. Bus Lines, Inc., 458 N.J. Super. 522, 533 (App. Div. 2019) ("'[C]onclusory and self-serving assertions by one of the parties are insufficient to overcome' a motion for summary judgment." (quoting Puder v. Buechel, 183 N.J. 428, 440-41 (2005))). Notably, a proffered self-serving

sworn statement, on its own, does not incontrovertibly create a material issue of fact.  See Carroll v. N.J. Transit, 366 N.J. Super. 380, 388 (App. Div. 2004).

Our Supreme Court has recognized "the obligation of employers to reasonably accommodate an employee with a disability."  Richter v. Oakland Bd. of Educ., 246 N.J. 507, 530 (2021) (citing N.J.A.C. 13:13-2.5(b)). N.J.A.C. 13:13-2.5(b) provides that "[a]n employer must make a reasonable accommodation to the limitations of an employee . . . who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship."

To establish an LAD claim for failure to accommodate:

> a plaintiff must demonstrate he or she (1) "qualifies as an individual with a disability, or [ ] is perceived as having a disability, as that has been defined by statute"; (2) "is qualified to perform the essential functions of the job, or was performing those essential functions, either with or without reasonable accommodations"; and (3) that defendant "failed to reasonably accommodate [his or her] disabilities."
>
> [Royster v. N.J. State Police, 227 N.J. 482, 500 (2017) (alternations in original) (quoting Victor v. State, 203 N.J. 383, 410 (2010)).]

"Although the LAD statute does not specifically address failure to accommodate, 'our courts have uniformly held that the [LAD] nevertheless requires an employer to reasonably accommodate an employee's handicap.'"

9

<u>Id.</u> at 499 (alteration in original) (quoting <u>Potente v. County of Hudson</u>, 187 N.J. 103, 110 (2006)).

It is undisputed that Thomas's autoimmune disease constituted a disability under the LAD and reasonable accommodations were required. The term "disability" under the LAD is broadly interpreted, as it "is not restricted to 'severe' or 'immutable' disabilities." <u>Guzman v. M. Teixeira Int'l., Inc.</u>, 476 N.J. Super. 64, 72 (App. Div. 2023) (quoting <u>Viscik v. Fowler Equip. Co.</u>, 173 N.J. 1, 16 (2002)).

Although Thomas established a disability, the competent evidence in the record belies her argument that the judge erred in granting summary judgment on her LAD claim alleging the DOC failed to provide reasonable accommodations. The record does not support Thomas's contentions that she was able to perform her job responsibilities in her preferred Bates location, the DOC did not undertake the same process each time they considered her requests, and the accommodations at Colpitts were insufficient. As the judge correctly found, no material issue of fact existed to dispute that the DOC provided reasonable accommodations after sufficiently engaging in a responsive interactive process with Thomas.

10

In determining the type of reasonable accommodation required, an "employer must initiate an informal interactive process with the employee. . . . This process must identify the potential reasonable accommodations that could be adopted to overcome the employee's precise limitations resulting from the disability." Tyan v. Vicinage 13 of Superior Ct. of N.J., 351 N.J. Super. 385, 400 (App. Div. 2002). An employer fails to engage in the interactive process if: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations . . . ; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations"; and (4) "but for the employer's lack of good faith," it could have reasonably accommodated the employee. Id. at 400-01. The LAD does not require employers to provide accommodations that would pose an undue burden. Richter, 246 N.J. at 524.

Since learning of Thomas's disability, the DOC maintained consistent communication with Thomas by responding to her concerns and requests for necessary accommodation. In 2004, when the DOC initially learned Thomas's disability required that she not sit near an operating air conditioning unit, it relocated her to a private office in Bates. Thereafter, to accommodate her request to remain in Bates and ability to complete her essential secretarial work responsibilities for co-workers in Colpitts, Thomas's supervisors

11

personally delivered her files. In August 2014, after she provided a doctor's note stating "[s]he need[ed] to work in an environment with a fixed temperature," the DOC permitted Thomas to remain in Bates despite their intention she join the CCU in Colpitts. The record demonstrates the DOC engaged in an interactive process with Thomas through continuously making efforts to address each request raised.

After Thomas provided a physician's letter opining that the optimal temperature for her condition was seventy-five degrees, the DOC determined it could accommodate her request in Colpitts. The DOC installed two thermostats with locks to ensure her temperature accommodation. After some months in Colpitts, Thomas was relocated to a nearby semi-private office because she had created a log documenting that temperatures were consistently below seventy-five degrees. The DOC also undertook heat insulation measures and provided a space heater for Thomas's use. After Thomas expressed her concerns and dissatisfaction, in March 2018, the DOC's ADA coordinator investigated alternatives and found an open office in another building with other employees.

The DOC provided Thomas a private office with a window and its own thermostat to ensure she could continue working within her title as a

secretarial assistant, switching to work with the Unit. The record, reviewed in the light most favorable to Thomas, substantiates that the DOC reasonably considered the information Thomas provided, acted in good faith responding to requests and complaints, and provided remedial actions. We discern no cause to disturb the judge's order.

The LAD only requires an employer undertake reasonable accommodations "designed to make certain changes in the work environment or structuring of employees' time that will allow disabled employees to remain at work without their physical handicaps impeding their job performance." Caraballo v. Jersey City Police Dep't, 237 N.J. 255, 268 (2019) (quoting Jones v. Aluminum Shapes, Inc., 339 N.J. Super. 412, 426-27 (App. Div. 2001)). The accommodation need not "acquiesce to the disabled employee's requests for certain benefits." Victor, 203 N.J. at 423 (quoting Raspa v. Off. of Sheriff of Gloucester, 191 N.J. 323, 339 (2007)). Our courts have consistently rejected the proposition that an employer's failure to meet a disabled employee's every demand by itself constitutes failure to engage in the interactive process. See id. at 424.

Lastly, we reject Thomas's arguments that reversal is warranted because the judge wrongly considered the effect of Thomas's accommodation on other

13

employees and referenced the results of the OSHA complaint. There was neither error in the judge's copious recitation of the record providing all reasonable inferences in favor of Thomas nor in his conclusion that, "[i]n terms of reasonableness here, what more could [the DOC] have done?" The judge's well-reasoned decision is amply supported as Thomas's "claim for failure to accommodate cannot meet the proofs required on [her] prima facie case." See id. at 425.

To the extent we have not addressed Thomas's remaining arguments, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION