**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4537-19

ELAINE TRIVISANO, a single
woman,

     Plaintiff-Appellant,

v.

CITY OF ATLANTIC CITY,

     Defendant-Respondent.

_____

Argued November 30, 2021 – Decided December 16, 2021

Before Judges Vernoia and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2538-18.

R.C. Westmoreland argued the cause for appellant (Westmoreland Vesper Quattrone & Beers, PA, attorneys; R.C. Westmoreland, on the briefs).

Daniel J. Gallagher argued the cause for respondent.

PER CURIAM

In this New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to -12-3, negligence suit against defendant City of Atlantic City, plaintiff Elaine Trivisano's complaint alleged she suffered personal injuries when she tripped on a raised screw or nail on the Atlantic City boardwalk, fell, and suffered injuries to her right shoulder. She alleged the City's negligent maintenance of the boardwalk resulted in a dangerous condition — the raised screw or nail — that caused her fall.

The motion court granted the City's motion for summary judgment, finding the City is immune from liability under the TCA because plaintiff failed to present sufficient evidence establishing: the screw or nail constitutes a dangerous condition within the meaning of N.J.S.A. 59:4-1(a); the City had actual or constructive notice of the alleged dangerous condition; and the actions taken by the City to protect against the condition, or its failure to take action, was palpably unreasonable. See generally N.J.S.A. 59:4-2 (explaining the requirements that must be satisfied to impose liability on a public entity for injuries caused by dangerous conditions on property). Plaintiff appeals from the court's order granting summary judgment to the City on plaintiff's claim. We affirm.

A-4537-19

# I.

We conduct a de novo review of an order granting a summary judgment motion, Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016), and we apply the same standard as the trial court, State v. Perini Corp., 221 N.J. 412, 425 (2015). In considering a summary judgment motion, "both trial and appellate courts must view the facts in the light most favorable to the non-moving party, which in this case is plaintiff." Bauer v. Nesbitt, 198 N.J. 601, 604 n.1 (2009) (first citing R. 4:46-2(c); and then citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Summary judgment is proper if the record demonstrates "no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law." Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders, 409 N.J. Super. 219, 228 (App. Div. 2009) (quoting R. 4:46-2(c)). Issues of law are subject to the de novo standard of review, and the trial court's determination of such issues is accorded no deference. Kaye v. Rosefielde, 223 N.J. 218, 229 (2015).

Our review of an order granting summary judgment requires our consideration of "the competent evidential materials submitted by the parties to identify whether there are genuine issues of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Bhagat v. Bhagat,

217 N.J. 22, 38 (2014). Here, we discern the following facts from our review of the parties' Rule 4:46-2 statements and the record of the proceedings before the motion court.

On November 1, 2016, plaintiff tripped as she walked on the Atlantic City boardwalk. She later testified she "felt" her "foot [get] stuck on" "something that was raised," causing her to fall and resulting in injuries to her right shoulder. She was aided by nearby pedestrians, and "while [she was] waiting for the EMTs to come," she "look[ed] back to the place where [her] trip started," and "at that location [she] saw a raised nail [or] a raised screw." On November 10, 2016, plaintiff had shoulder surgery for the injuries she suffered in the fall.

In January 2017, plaintiff served the City with a notice of tort claim in accordance with the TCA. N.J.S.A. 59:8-8. In February 2017, three months after her fall, plaintiff returned to the boardwalk with an investigator, Russ Kelly, who took photographs "of the site showing a raised screw and a raised bent nail."[1] Plaintiff testified that at that time she returned to the boardwalk, she

---

[1] The object plaintiff claims caused her fall is variously referred to both as a screw and a nail in the parties' briefs on appeal and the parties' Rule 4:46-2 statements. See R. 4:46-2(a) to (b). (Pa12, 148). We refer to the item as a screw because, as we explain, plaintiff argued before the motion court and argues on appeal that a bent screw caused her fall.

realized that the entire area was in disrepair, with warped boards everywhere," screws sticking out, [and] nails sticking out."

Dennis McReynolds is employed by the City as a boardwalk inspector. He testified at deposition that the boardwalk's condition "changes on a daily basis," and that "the [b]oardwalk crew from Public Works inspect[s] the [b]oardwalk twice a day," "five days a week," "for items that may be potential[ly] hazardous." McReynolds explained, however, that he was "the only inspector" "for the area in question."

McReynolds testified there are "lots of reasons" the screw depicted in photographs taken by Kelly in February 2017 "appear[ed] to be bent." McReynolds opined the: (1) the screw could have been bent by "[v]ehicles riding up on the boardwalk" and "bounc[ing] [the boards] a little bit," thereby causing "the screws [to] pop up a little bit" and bend when the vehicles drive over them; or (2) the screw could have "be[en bent] by the rubber on the edge of [a] snowplow." McReynolds did not "believe" pedestrian traffic could have caused the screw to bend, and that "in [his] opinion," the examples he provided were the only possible causes of the screw "be[ing] bent."

McReynolds further testified the City "has . . . a working definition of . . . a tripping hazard" that is "consistent with the . . . Americans with

Disabilities Act['s definition], [which is] one-quarter [of an] inch above the walking surface." He also stated the City "ha[d] [sufficient] resources to [conduct] safety inspections of the [b]oardwalk to identify tripping hazards." Although he opined the bent screw depicted in the February 2017 photographs did not represent a dangerous condition, he stated that "if [he] saw [the screw in that condition]," he would "hammer" it down.

McReynolds also testified that following the City's receipt of plaintiff's tort claim notice, he was not "given notice of [plaintiff's accident]," he was not made aware of the City sending anyone to the site of plaintiff's injury to "inspect what the notice was [about]"; and he "[n]ever [specifically made] an inspection of the condition that caused [plaintiff] to fall." However, he testified he "inspected that area many times since [plaintiff's] fall and if there were any problems that [he] saw, [he] took care of [them]."

Plaintiff's expert in boardwalk construction and maintenance, Francesco Tedesco "review[ed] . . . the [February 2017] photographs provided" by Kelly, visited the scene on August 28, 2019, almost three years after plaintiff's fall, and issued a September 11, 2019 report concerning his findings. In his report, Tedesco states that during his 2019 visit to the site, he "observed a raised deck board, many 'popped' or raised nails[,] and one bent screw[,]" which he

6

measured and determined was "a minimum of [three-eighths of an inch] above the deck board[.]" He opined the conditions he observed at the site are "probably due to substructure deterioration and heavy vehicle traffic," and that "[e]ither of these foreseeable mechanisms, were of long-time durations (almost [one] year) and caused this tripping hazard." He also opined "[i]t is highly probable if not certain that with no notice/warning whatsoever to [plaintiff], she tripped over [the] raised bent screw/raised deck boards, which caused her to stumble/fall and cause serious injury."

Tedesco also offered an opinion on the probable causes of what he characterized as the deteriorated and unrepaired condition of the raised bent screw and deck boards. Tedesco reported: "Due to a long process of neglect of the [C]ity's daily inspectors to see the deteriorated conditions of the boards and substructure, boards were never replaced/repaired. Screws and nails have been raised due to repeated traversing of heavy motor vehicles and deteriorated substructure boards and screws/nails not reset."

Tedesco's report also includes an opinion the City had constructive notice of the bent screw plaintiff alleged caused her fall because, based on his "experience, training[,] and knowledge, the . . . screw was most probably raised and in dangerous condition for [eleven-plus] months" prior to the "photos of

7

Feb[ruary] 21, 2017."[2] In further support of the opinion, Tedesco notes "March 4, 2016 was last snowfall until [the] photos" in February 2017, and "no record of repair can be accounted for by the City."

Tedesco's report includes his opinion that because McReynolds was not notified of the raised screw following the City's receipt of plaintiff's tort claim notice, and the raised screw had not been repaired by the time he visited the site in 2019, the City

> failed in notifying its relevant, responsible [b]oardwalk personnel of actual notice of trip hazards and has ignored for an unreasonably long period of [eleven plus] months, and without any reason or reasonable basis, the maintenance of its boardwalk, and in fact allowed the tripping hazard and boardwalk defect to exist both before and after [plaintiff]'s . . . injury.

The court heard oral argument on the City's motion and entered an order granting the City summary judgment. In a decision from the bench, the court found "as a matter of law" that the existence of the "[three-eighths] of an inch"

---

[2] Tedesco's report also includes an opinion the City had actual notice of the bent screw plaintiff alleges caused her injury. We do not address that opinion because in her brief on appeal, plaintiff does not argue the court erred by finding she did not present evidence establishing the City had actual notice of the bent screw. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("[I]ssue[s] not briefed on appeal [are] deemed waived."); Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (same).

"protruding . . . screw" was "minor [or] trivial" and "did not constitute a dangerous condition" under the TCA.

The court next found that, even assuming the bent screw constituted a dangerous condition under the TCA, "Tedesco's report . . . does not provide any explanation for [his] conclusion [the City] had constructive notice of the . . . screw [prior to plaintiff's fall], . . . that [the screw] was most probably raised for [eleven] months [prior to the time of the February 2017 photographs], or that [the City] had actual notice prior to" plaintiff's fall. The court found Tedesco's opinion concerning the purported length of time the bent screw protruded from the boardwalk constituted an inadmissible net opinion, and the court concluded plaintiff therefore failed to present any evidence establishing the City had constructive notice of the protruding bent screw prior to plaintiff's fall. See N.J.S.A. 59:4-2(b).

The court further found plaintiff did not present evidence establishing a genuine issue of material fact concerning whether plaintiff's injury was caused by any "palpably unreasonable" act or omission by the City. See N.J.S.A. 59:4-2. The court found:

> With regard to this particular incident, as indicated[,] . . . McReynolds was the only boardwalk inspector for [the City]. He inspects the boardwalk twice a day[,] Monday through Friday. He . . . is

9

> equipped to address any tripping hazard. The boardwalk is four miles long and approximately [sixty] feet[,] or so[,] wide at the point where . . . plaintiff fell. The actions that the [C]ity took in this instance, this [c]ourt finds were not unreasonable with regard to one [screw] popped [three-eighths] of an inch on that . . . four mile by [sixty] foot boardwalk.

Because the court found plaintiff did not present evidence supporting a finding of liability under the TCA, see N.J.S.A. 59:4-2, against the City for a dangerous condition on its property — the boardwalk — it granted the City summary judgment. Plaintiff appeals from the court's summary judgment order.

## II.

Public entities are presumptively "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002). "Under the TCA, immunity [for tort liability] is the rule and liability is the exception." Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 181 (2002). Thus, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar, 171 N.J. at 10); see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by [the TCA], a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity . . . .").

The TCA allows imposition of tort liability against public entities for injuries caused by conditions of property, but only in limited circumstances. Under N.J.S.A. 59:4-2, a public entity has tort liability for injuries caused by the entity's property only where it is established: (1) the public entities' "property was in dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition[.]" See also Vincitore v. N.J. Sports & Expo. Auth., 169 N.J. 119, 125 (2001). A public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2.

A plaintiff asserting a tort claim against a public entity for injuries allegedly caused by a condition on entity's property must present evidence satisfying each of the elements of a cause of action under N.J.S.A. 59:4-2. Polzo, 209 N.J. at 66; see also Carroll v. N.J. Transit, 366 N.J. Super. 380, 386 (App. Div. 2004) (explaining N.J.S.A. 59:4-2 "places the burden squarely on the

plaintiff to prove each of its elements").  A failure to present sufficient evidence establishing any element of a cause of action under N.J.S.A. 59:4-2 requires dismissal of the claim.  Polzo, 209 N.J. at 66.

Plaintiff argues on appeal that the trial court erred by finding as a matter of law that:  (1) the raised screw plaintiff claims caused her fall did not constitute a "dangerous condition"; (2) Tedesco's report constituted an inadmissible net opinion, and plaintiff's failure to otherwise provide evidence establishing the length of time the screw was present on the City's property rendered plaintiff unable to satisfy her burden of proving the City had "constructive notice" of the alleged dangerous condition prior to plaintiff's fall; and (3) plaintiff presented no evidence establishing her injury was caused by any "palpably unreasonable" action or omission by the City.  N.J.S.A. 59:4-2.

Plaintiff first claims the court erred by determining as a matter of law that the protruding bent screw did not constitute a dangerous condition.  Plaintiff argues that whether the bent screw constituted a dangerous condition for purposes of determining the City's liability under N.J.S.A. 59:4-2 presented a fact issue for a jury.

Under the TCA, a dangerous condition is defined as a "condition of property that creates a substantial risk of injury when such property is used with

due care in a manner in which it is reasonably foreseeable that it will be used."
N.J.S.A. 59:4-1(a). To pose a "'substantial risk of injury' a condition of property cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property . . . ." Atalese v. Long Beach Twp., 365 N.J. Super. 1, 5 (App. Div. 2003). The phrase "used with due care" is understood to mean "objectively reasonable" use. Garrison v. Twp. of Middleton, 154 N.J. 282, 291 (1998).

"Whether property is in a 'dangerous condition' is generally a question for the" jury, as "the finder of fact." Vincitore, 169 N.J. at 123. However, a court may properly decide property is not in a dangerous condition under N.J.S.A. 59:4-1(a) where it determines that a reasonable factfinder could not find the property was in a dangerous condition. Id. at 124; see also Polyard v. Terry, 160 N.J. Super. 497, 510 (App. Div. 1978) (explaining a court may determine if a property is in a dangerous condition under N.J.S.A. 59:4-1(a) where the evidence does not permit "reasonable minds to differ as whether" the condition is dangerous); cf. Daniel v. N.J. Dep't of Transp., 239 N.J. Super. 563, 573 (App. Div. 1990) (finding trial court properly allowed jury to consider a public entity's liability under N.J.S.A. 59:4-2 where a reasonable jury could conclude the property was in a dangerous condition).

13

Plaintiff correctly notes the City's boardwalk inspector, McReynolds, testified that a tripping hazard is presented when a screw protrudes more than one-quarter of an inch above the boardwalk's surface. Indeed, plaintiff argues the bent screw was a dangerous condition because it exceeded what she argued was the one-quarter inch tripping threshold. But plaintiff's dangerous condition claim is based on the assertion the bent screw protruded by three-eighths of an inch. In other words, plaintiff claims the protruding bent screw presented a substantial risk of injury because it exceeded the claimed tripping hazard standard by one-eighth of an inch.

The miniscule and practically immeasurable deviation from the tripping threshold presented by a single bent screw on a boardwalk that is four miles long, and sixty feet wide, does not permit a determination by a reasonable factfinder that the screw created a "substantial risk of injury" to the anticipated users of the boardwalk, including pedestrians such as plaintiff. See, e.g., Wilson v. Jacobs, 334 N.J. Super. 640, 648-49 (App. Div. 2000) (finding no "dangerous condition" presented to pedestrians by the defendant's sidewalk, despite the court reviewing photographs of the sidewalk and noting "a space between two concrete blocks"); cf. Atalese, 365 N.J. Super. at 6 (finding a three-quarter inch pavement differential in a bike and pedestrian lane spanning an entire block that

resulted in an injury to a pedestrian constituted a "substantial risk of injury"). Under the circumstances presented, when viewed most favorably to plaintiff, we are convinced the court correctly concluded that no reasonable factfinder could find a single bent screw protruding three-eighths of an inch above the boardwalk surface created "a substantial risk of injury" to an individual exercising due care while walking on the boardwalk. See N.J.S.A. 59:4-1(a). The court therefore correctly determined plaintiff failed to present sufficient evidence of a dangerous condition to support his cause of action against the City under N.J.S.A. 59:4-2.

We also affirm the court's summary judgment order for a separate but equally dispositive reason. Even assuming the bent screw constituted a dangerous condition, plaintiff's cause of action fails as a matter of law because the summary judgment record is devoid of competent evidence the City had constructive notice of the condition prior to plaintiff's fall. See N.J.S.A. 59:4-2(b).

Plaintiff relied, and relies, solely on Tedesco's opinion concerning the purported length of time the bent screw protruded from the boardwalk's surface to support her claim the City had constructive notice of the alleged dangerous condition — the bent screw — under N.J.S.A. 59:4-2(b). Plaintiff argues the

court erred by finding Tedesco's opinion the protruding bent screw was present for at least eight months prior to her fall constituted an inadmissible net opinion. Based on that finding, the court determined plaintiff did not present any competent evidence the City had constructive notice of the screw prior to plaintiff's fall.[3]

"When . . . a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Estate of Hanges v. Metro. Prop. & Cas. Ins., 202 N.J. 369, 384-85 (2010)). Appellate review of a trial court's disposition on a summary judgment motion "proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid. We apply these principles here.

We review a court's "[e]videntiary decisions . . . under the abuse of discretion standard." Hanges, 202 N.J. at 383-84. "Under this standard, 'an appellate court should not substitute its own judgment for that of the trial court,

---

[3] Again, plaintiff does not argue on appeal that the court erred by finding plaintiff failed to present competent evidence establishing the City had actual notice of the bent screw prior to plaintiff's fall. We therefore do not address the court's finding and conclusion. Sklodowsky, 417 N.J. Super. at 657; Jefferson Loan Co., 397 N.J. Super. at 525 n.4.

unless the trial court's ruling was so wide of the mark that a manifest denial of justice resulted.'" Hanisko v. Billy Casper Golf Mgmt., Inc., 437 N.J. Super. 349, 362 (App. Div. 2014) (quoting State v. Brown, 170 N.J. 138, 147 (2001)). "However, [w]hen the trial court fails to apply the proper test in analyzing the admissibility of proffered evidence, our review is de novo." Konop v. Rosen, 425 N.J. Super. 391, 401 (App. Div. 2012) (alteration in original) (internal quotation marks and citation omitted).

A public entity is "deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b). Here, plaintiff relied solely on the opinion set forth in Tedesco's report to establish the bent screw protruded from the boardwalk for a sufficient period of time prior to her fall to establish constructive notice under N.J.S.A. 59:4-3(b).

"The net opinion rule is a 'corollary of [N.J.R.E. 703],'" Townsend, 221 N.J. at 53 (alteration in original) (quoting Polzo v. County of Essex, 196 N.J. 569, 583 (2008)), and "requires that an expert '"give the why and wherefore" supporting an opinion "rather than a mere conclusion,"'" id. at 54 (quoting

Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

"The net opinion rule . . . mandates that experts 'be able to identify the factual

bases for their conclusions, explain their methodology, and demonstrate that

both the factual bases and the methodology are reliable.'" Id. at 55 (quoting

Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)).  "For example, 'a trial

court may not rely on expert testimony that lacks an appropriate factual

foundation and fails to establish the existence of any standard about which the

expert'" offers an opinion.  Davis v. Brickman Landscaping, Ltd., 219 N.J. 395,

410 (2014) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344,

373 (2011)).  "[A]n expert offers an inadmissible net opinion if he or she 'cannot

offer objective support for his or her opinions[] but testifies only to a view about

a standard that is 'personal.'"  Ibid. (quoting Pomerantz Paper Corp., 207 N.J. at

372).

Tedesco's opinion, as reflected in his report, concerning the purported

length of time the bent screw protruded above the boardwalk surface is

untethered to any "why or wherefore." Townsend, 221 N.J. at 54.  The opinion

is based solely on what Tedesco declares is his "experience, training[,] and

knowledge."  Tedesco's report also does not identify any "objective support"

supporting his opinion, Davis, 219 N.J. at 410, or describe any reliable

18

methodology upon which his opinion is found, <u>Townsend</u>, 221 N.J. at 55. His report conspicuously offers none.

In the portion of his report addressing the purported length of time the bent screw protruded from the boardwalk surface, Tedesco makes a vague parenthetical reference, stating "March 4, 2016 was [the] last snowfall until photos of February 21, 2017." The reference, however, is unexplained, does not include any "why and wherefore," and is bereft of any explanation as to the manner in which the included information supports an opinion grounded in any objective standard concerning the length of time the bent screw protruded prior to plaintiff's fall.[4] The absence of any articulated "why and wherefore" for his

_____

[4] We are not persuaded by plaintiff's attempt to fill the gaps in Tedesco's report with arguments that find no support in competent evidence in the motion record. In a tacit admission Tedesco's report does not include the "why and wherefore" required for a competent expert opinion, plaintiff proffers in her brief on appeal what she contends was Tedesco's reasoning underlying his opinion about the length of time the bent screw protruded above the boardwalk surface. For example, she contends Tedesco would testify about the condition of the bent screw shown in the February 2017 photographs and the discoloration of the screw, and he would explain the reason he referred to the March 4, 2016 snowfall date was because McReynolds testified the bent screw may have been caused by a snowplow. Plaintiff's proffer is unsupported by any competent evidence in the form of an affidavit or certification from Tedesco, and no affidavit or certification from Tedesco was presented to the motion court. <u>See</u> <u>R.</u> 1:6-6. In her brief on appeal, plaintiff seeks to provide the "why and wherefore" for Tedesco's opinion that is absent from the report upon which plaintiff exclusively relied in opposition to the City's summary judgment motion. Plaintiff's effort to

opinion concerning the length of time the bent screw protruded above the boardwalk surface renders his opinion a purely personal one — a "mere conclusion" — that is an inadmissible net opinion. Id. at 54; see also Pomerantz Paper Corp., 207 N.J. at 372 (explaining "an expert's bare opinion that has no support in factual evidence or similar data is a mere net opinion which is not admissible and may not be considered"). As a result, we are unable to conclude the court abused its discretion by failing to consider Tedesco's opinion as competent evidence supporting plaintiff's opposition to the City's summary judgment motion. See Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243-44(App. Div. 2013) (stating "the conclusory statements of plaintiff's expert are not grounded in identified objective standards . . . and thus must be discarded as inadmissible net opinion," and "a net opinion is insufficient to satisfy a plaintiff's burden [in opposing] summary judgment").

Lacking any competent evidence concerning the length of time the bent screw plaintiff alleges caused her fall protruded from the boardwalk surface,

_____

breathe life into the Tedesco's fatally flawed net opinion, based solely on the arguments in her brief on appeal, is unavailing. See ibid.; see also Baldyga v. Oldman, 261 N.J. Super. 259, 265 (App. Div. 1993) ("The comments following [Rule 1:6-6] illustrate that its purpose is to . . . eliminate the presentation of facts which are not of record by unsworn statements of counsel made in briefs and oral arguments.").

plaintiff failed to carry her burden of establishing the City had constructive notice of the condition of the City's property upon which her cause of action is based. See N.J.S.A. 59:4-2(b); N.J.S.A. 59:4-3(b). "[A] net opinion alone is insufficient to sustain [a] plaintiff's burden of establishing a public entity was on constructive notice of a dangerous condition." Polzo, 196 N.J. at 584. The court correctly determined plaintiff's failure to present evidence establishing that essential element of her cause of action under N.J.S.A. 59:4-2 entitled the City to judgment as a matter of law. Polzo, 209 N.J. at 66.

We are also convinced the court correctly determined plaintiff failed to present sufficient evidence establishing that "the action or inaction on the part of the public entity in protecting against the condition was 'palpably unreasonable.'" Kolitch v. Lindedahl, 100 N.J. 485, 492-93 (1985). To establish palpably unreasonable behavior, a plaintiff has a "steep burden" to prove "more than ordinary negligence." Coyne v. State, Dep't of Transp., 182 N.J. 481, 493 (2005). "Palpably unreasonable" implies behavior by a public entity "'that is patently unacceptable under any given circumstance' and that 'it must be manifest and obvious that no prudent person would approve of its course of action or inaction.'" Holloway v. State, 125 N.J. 386, 403-04 (1991) (quoting Kolitch, 100 N.J. at 493 (citations omitted)). A determination of whether a

public entity's behavior is palpably unreasonable involves "not only what has been done" but also the entity's "motivating concerns." Schwartz v. Jordan, 337 N.J. Super. 550, 563 (App. Div. 2001). "Simply put, the greater the risk of danger known by the [public entity] and sought to be remedied, the greater the need for urgency." Ibid.

Although whether a public entity acted in a palpably unreasonable manner is an issue often decided by a jury, the court may decide the question in appropriate cases. Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002). "[L]ike any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence." Charney v. City of Wildwood, 732 F. Supp. 2d 448, 457 (D.N.J. 2010) (citing Black v. Borough of Atlantic Highlands, 263 N.J. Super. 445, 451-52 (App. Div. 1993)), aff'd, 435 Fed. Appx. 72 (3d Cir. 2011).

In Carroll, a case involving a slip and fall in a subway station, we noted the following in determining that the plaintiff did not satisfy the "palpably unreasonable" prong of a cause of action under N.J.S.A. 59:4-2:

> The [plaintiff's] proposition that it was palpably unreasonable for the [defendant's] worker to sweep the [subway] platform before the steps [where the plaintiff fell] is completely unsupported by any evidence in [the]

record. So too is the similar labeling of [the] defendant's inspection routine. [The p]laintiff presented no proofs on the standard of care for inspections of subway or rail stations. And, as previously noted, the record is devoid of any evidence of a history of similar incidents or complaints, or a demonstrable pattern of conduct or practice to suggest the need for a more frequent inspection schedule. As such, [the] plaintiff's claims of palpable unreasonableness presented no jury question.

[366 N.J. Super. at 390-91 (first citing Muhammad v. N.J. Transit, 176 N.J. 185, 200 (2003); and then citing Maslo, 346 N.J. Super. at 346 349).]

In Charney, a case in which the plaintiff fell due to the presence of a hole in the Wildwood boardwalk, the court determined the plaintiff did not raise a genuine issue of material fact as to whether Wildwood acted palpably unreasonably under the TCA. The court explained:

Even assuming . . . that [the defendant] had notice of the hole, it cannot be said that the decision to leave a one and one-half inch deep, one and one-quarter inch wide triangular hole unrepaired was palpably unreasonable. At wors[t], the decision to leave small boardwalk defects unrepaired was negligent. Indeed, [the defendant] . . . arguably could have made more thorough and efficient repairs of the boardwalk. Perfection, however, is not required under the [TCA]. [The defendant] made daily inspections of the boardwalk and repaired those defects it deemed sufficiently hazardous . . . . [The defendant]'s failure to remedy a small defect in a walkway surface cannot be said to constitute the kind of "outrageous" or "patently unacceptable" behavior that rises to the level

23

of palpable unreasonableness. Imperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably unreasonable.

[732 F. Supp. 2d at 458.]

Here, plaintiff did not present any competent evidence establishing the purported dangerous condition — the bent screw that protruded three-eighths of an inch above the boardwalk surface — was the result of any "palpably unreasonable" action or omission prior to plaintiff's fall. Plaintiff argues in part that the City's actions were palpably unreasonable because McReynolds conducted approximately two hundred inspections of the boardwalk and failed to discover the protruding bent screw during the eleven months the bent screw protruded from the boardwalk prior to the taking of the February 2017 photographs. We reject that argument, however, because it is premised on Tedesco's inadmissible net opinion that the bent screw protruded from the boardwalk during that eleven-month period, and plaintiff otherwise failed to present any competent evidence establishing the length of time the screw protruded prior to plaintiff's fall.

Plaintiff also relies on Tedesco's opinions concerning the City's actions and the boardwalk's condition following her fall. For example, Tedesco states

24

the protruding bent screw was present when he inspected the boardwalk in 2019, almost three years after plaintiff's fall, and he opines the continued presence of the bent screw established the City acted in a palpably unreasonable manner in conducting its inspections of the boardwalk.  We are unconvinced by plaintiff's reliance on Tedesco's opinion because success on her claim requires evidence the City's conduct was palpably unreasonable with regard to protecting against the purported dangerous condition at the time she fell, not over the three years after she fell.  See N.J.S.A. 59:4-2 ("Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property [unless] the action the entity took to protect [the plaintiff] against the condition or the failure to take such action was . . . palpably unreasonable." (Emphasis added)).

Plaintiff failed to present any evidence demonstrating the City's daily inspections of the Boardwalk prior to her fall were palpably unreasonable by failing to discover and fix the bent screw that, even based on the standards proffered by Tedesco, exceeded the tripping threshold by a mere eighth of an inch.  Plaintiff's counsel argues that McReynolds's method of conducting inspections while riding in his vehicle was palpably unreasonable, but the claim is unsupported by any competent evidence of an objective and accepted

inspection standard. Similarly, Tedesco opined generally that the City's inspection efforts were inadequate, but he failed to identify any objective "standard of care for inspections of [boardwalks]," pursuant to which he reached his conclusion that the City's inspections and its "fail[ure] to see" the bent screw prior to plaintiff's fall were in any way "palpably unreasonable." Carroll, 366 N.J. Super. at 390-91; see also Davis, 219 N.J. at 410 (quoting Pomerantz Paper Corp., 207 N.J. at 373).

Further, the record is "devoid of any evidence of a history of similar incidents or complaints, or a demonstrable pattern of conduct or practice [which would have] suggest[ed] the need for a more frequent inspection schedule" or different inspection methodology prior to plaintiff's fall. Carroll, 366 N.J. Super. at 390-91. Plaintiff presented evidence concerning only one other incident that she contends occurred "[twenty] to [thirty] paces" from the site of her injury, in which a pedestrian allegedly fell due to a raised screw or nail on the boardwalk. However, plaintiff fell in 2016, and the fall in the case to which she refers occurred in 2018. Thus, plaintiff offers no "history of similar incidents or complaints, or a demonstrable pattern or practice to suggest the need for a more frequent inspection schedule" relating to the period preceding her injury. Ibid.; see also N.J.S.A. 59:4-2.

As the Court reasoned in <u>Polzo</u>, we "do not have the authority to dictate to public entities the ideal form of [a boardwalk] inspection program particularly given the limited resources available to them." 209 N.J. at 69. Thus, "[w]e cannot find that the absence of a more systematic program violates the [TCA], particularly when plaintiff has not provided . . . any recognized standard of care that deserves more." <u>Ibid.</u> The motion court correctly determined plaintiff failed to present sufficient evidence establishing the City acted in a palpably unreasonable manner concerning the alleged dangerous condition. N.J.S.A. 59:4-2.

Plaintiff's remaining arguments that we have not directly addressed are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4537-19