**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2903-22

BARBARA YARUS,

    Plaintiff-Appellant,

v.

NEW JERSEY TRANSIT, STATE
OF NEW JERSEY, PORT
AUTHORITY OF NEW YORK
AND NEW JERSEY, HOBOKEN RAIL
TERMINAL,

    Defendants-Respondents,

and

CITY OF HOBOKEN and COUNTY
OF HUDSON,

    Defendants.

_____

Submitted September 26, 2024 – Decided November 12, 2024

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1637-21.

Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, attorneys for appellant (John J. Scura II, of counsel and on the briefs).

Hohn & Scheüerle, LLC and Matthew J. Platkin, Attorney General, attorneys for respondents New Jersey Transit and Hoboken Rail Terminal (John A. Thiry and Robert McGuire, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Barbara Yarus appeals from the court's April 3, 2023 order granting defendants New Jersey Transit's (NJ Transit) and Hoboken Rail Terminal's motions for summary judgment and dismissing her negligence complaint, and its May 15, 2023 order denying reconsideration. We affirm.

I.

On April 24, 2020, at approximately 5:00 p.m., plaintiff slipped and fell on the platform at the Hoboken Rail Terminal. The platform where plaintiff fell was partially covered and therefore exposed to the natural elements. Plaintiff was unable to state if it was raining when she arrived at the terminal, despite a little more than a half inch of rainfall between midnight and 6:00 p.m. on the day of the incident.

In her answers to interrogatories, plaintiff stated she did not fall directly because of the rain but rather "as a result of an unknown liquid substance already

2

present on the platform resulting in a dangerous, slippery and hazardous accumulation to exist." Plaintiff further testified at her deposition she observed the floor at Hoboken Rail Terminal was wet before she fell, but did not observe any signs or safety cones indicating the presence of wet or dangerous conditions.

Once on the platform, plaintiff stated she "was walking . . . not rushing" and proceeding "cautious[ly]," when she "saw water . . . coating the platform" and suddenly fell. She acknowledged walking several lengths on the platform before falling and described the "coating" as "[w]hat looked like would normally be there when it rained. Not a puddle. Just a coating of water that she saw all throughout the platform . . . ." She further explained at her deposition she fell prior to arriving at her intended location on the platform and noticed her train had already arrived, but she did not see any NJ Transit personnel on the platform.

NJ Transit Police Detective Brian Lee arrived at the scene shortly thereafter and prepared a report in which he stated, "the area where [plaintiff] fell was slippery due to an unknown liquid/substance being spilled on the platform." Detective Lee testified at his deposition he recalled the unknown liquid referenced in his report "[was not] water. It was just something . . . some type of residue that was . . . very slippery." He further explained the substance was "visible," but "hard to see," but "if you looked closely, you could see there

3

was something there." Detective Lee described, however, that the substance had "no color that would stand out."

Detective Lee also testified he did not recall seeing any warning signs alerting passengers the platform may be wet on the day of plaintiff's incident. Further, when asked if he was aware if defendants placed warning signs throughout Hoboken Rail Terminal when it rained, Detective Lee stated, "I [can not] recall ever really seeing any [warning signs]." Detective Lee noted, however, he only patrolled the terminal "once a week," if he was assigned to "it at all."

Carlos Freire, a NJ Transit representative, was also deposed, and he testified Hoboken Rail Terminal is maintained in broom swept condition and the garbage cans are emptied twice per day. Freire also stated there are not "written records confirming exactly when such tasks are performed[,]" and in the event of a spill, NJ Transit would respond to the situation, but again, "no records are kept as to such action . . . ." With respect to inclement weather, Freire stated, "[w]e do put safety cones indicating there could be a potential slippery when wet [condition] . . . at random locations in the terminal."

Although Freire's deposition testimony as to whether yellow safety towers would be placed on the platform itself was unclear and at best equivocal, he did

A-2903-22

explain that NJ Transit staff are instructed to squeegee any areas containing standing water. Moreover, Freire testified monthly safety meetings are held where staff are reminded to "call in any slippery condition. Make sure [they] put . . . safety cones on. Make sure [there is] no standing water . . . ."

Plaintiff's engineering expert, Himad Beg, P.E., issued a report in which he opined, to a reasonable degree of engineering and scientific certainty, plaintiff slipped and fell due to "an unknown slippery liquid that was spilled and left on the incident rail track platform's concrete floor surface." Beg also opined "[i]mproper/inadequate inspection and maintenance policies and/or procedures were being followed at the subject Hoboken Terminal railway station" that contributed to plaintiff's incident.

Beg concluded there was an absence of barricades, warning signs, or cones at the incident location, and NJ Transit failed to reasonably protect its passengers, "especially in light of NJ Transit's heightened duty of care with respect to their passengers when they knew or reasonably should have known of the hazardous condition that caused [plaintiff] to fall." He noted images from Detective Lee's body-worn camera show Detective Lee's footprint in the substance, which "indicat[es] that the slippery liquid substance at the incident location had a consistency or viscosity to it."

After the close of discovery, defendants moved for summary judgment and contended certain provisions of the New Jersey Tort Claims Act (TCA) barred plaintiff's recovery. Plaintiff opposed defendants' application and relied on Maison v. N.J. Transit Corp., 245 N.J. 270 (2021), for the proposition that a heightened standard of care owed by common carriers applied to defendants' conduct, the motion record contained genuine and material issues of fact on the issue of notice of any dangerous condition, and defendants breached their duty owed to plaintiff. After considering the parties' written submissions and oral arguments, the court rejected plaintiff's arguments, granted defendants' motion, issued a conforming order, and explained its decision in an oral opinion.

Because this case involved an alleged dangerous condition, the court began its analysis by distinguishing Maison and rejecting plaintiff's argument that the common carrier standard applied. Instead, the court determined under the TCA, the motion would "turn on whether [NJ] Transit had actual/constructive notice . . . ." It also explained "whether [defendants' actions or inactions were] palpabl[y] unreasonable [does not] even come into play unless [there is] really actual notice."

As to the notice issue, the court stated plaintiff has "the burden of establishing that the condition had existed for a period of time and was of such

6

an obvious nature that . . . the public entity in the exercise of due care should have discovered the condition and its dangerous character." Relying on Polzo v. County of Essex, 196 N.J. 569, 581 (2008), the court explained, "the mere existence of the[] alleged dangerous condition is not constructive notice of it." Further, citing Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002), the court reasoned without actual or constructive notice, "palpable unreasonableness cannot come into play at all . . . ."

With regard to the obviousness of the alleged dangerous condition, the court noted only Detective Lee testified on that point and he stated, the foreign substance at issue "was hard to see." The court therefore concluded plaintiff failed to establish the condition existed for a period of time such that defendants should have been aware of it.

As to the Detective Lee's footprint that Beg observed, the court found it "prove[d] nothing . . . [as it occurred] at a train station and a platform where many, many people are getting on and off of the train," and its mere presence on the platform failed to address the "temporal question as to how long that slippery substance may have been there," as a "fair reading" of the evidence in a light most favorable to plaintiff "could merely mean that the person that was walking in front of [plaintiff] might have dropped a slippery substance on that platform

7

. . . ." The court thus concluded such was "certainly not enough to raise a genuine issue of material fact."

Plaintiff moved for reconsideration, which the court denied and explained its reasoning in an oral decision. Applying Rule 4:49-2, and relying on D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), the court concluded its prior decision was not "based upon a palpably incorrect or irrational basis," nor did the court fail to "consider, or fail[] to appreciate the significance of probative, competent evidence." This appeal followed.[1]

## II.

Before us, plaintiff argues the court erred in applying N.J.S.A. 59:4-2 to her dangerous condition claim and instead repeats that Maison mandates the imposition of a heightened standard of care for common carriers, which the defendants breached when they purportedly failed to provide a safe means of egress and ingress on the train platform. She further maintains the motion record contained triable issues of fact regarding defendants' actual or constructive knowledge of the dangerous condition under N.J.S.A. 59:4-2, even assuming the heightened standard of care did not apply. Finally, she argues defendants'

---

[1] Plaintiff thereafter filed a stipulation of dismissal with prejudice dismissing her claims against defendants Port Authority of New York and New Jersey, City of Hoboken, and County of Hudson.

A-2903-22

conduct was palpably unreasonable under N.J.S.A. 59:4-2 and N.J.S.A. 59:2-3(d).

We first address the appropriate standards of review for each order under review. We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Alfano v. Schaud, 429 N.J. Super. 469, 474 (App. Div. 2013) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration for an abuse of discretion. JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022) (citing Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382

(App. Div. 2015)).  "Where the order sought to be reconsidered is interlocutory, as in this case, Rule 4:42-2 governs the motion."  Ibid.  Under Rule 4:42-2, "interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'"  Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021).

It is undisputed defendants are public entities and plaintiff's claims are thus properly evaluated under the provisions of the TCA.  Muhammad v. N.J. Transit, 176 N.J. 185, 194 (2003).  Public entity liability is restricted under the TCA.  See Polzo v. County of Essex, 209 N.J. 51, 55 (2012).  Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability."  Kahrar v. Borough of Wallington, 171 N.J. 3, 9-10 (2012) (citing Collins v. Union Cnty. Jail, 150 N.J. 407, 413 (1997)); see also N.J.S.A. 59:1-2, 2-1.  Accordingly, "immunity for public entities is the general rule and liability is the exception."  Kemp by Wright v. State, 147 N.J. 294, 299 (1997); accord D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (describing that rule as the "guiding principle" of the TCA (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005))).

Under the TCA:

> A public entity is liable for injury caused by a condition
> of its property if the plaintiff establishes that the

10

property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

> a. a negligent or wrongful act or omission of an employee of the public entity within the scope of [their] employment created the dangerous condition; or
>
> b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

Thus, in order to succeed on a claim against a public entity, a plaintiff must prove: (1) the public property was in a dangerous condition; (2) "the dangerous condition created a [substantial and] foreseeable risk of, and actually caused, injury to plaintiff[;]" (3) the public entity knew of the dangerous condition; and (4) the public entity's action to protect against the dangerous condition was palpably unreasonable. Muhammad, 176 N.J. at 194. Plaintiff's

11

obligation to demonstrate these elements is a "heavy burden." Foster v. Newark Hous. Auth., 389 N.J. Super. 60, 65-66 (App. Div. 2006).

"A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). Additionally:

> A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character.
>
> [N.J.S.A. 59:4-3(b).]

As such, "when a public entity actually knows of a . . . defect and 'should have known of its dangerous character,' it is on actual notice[,]" and "when a dangerous condition is 'obvious' and has existed 'for such a period of time' that the public entity should have discovered it through the exercise of reasonable care, the public entity is on constructive notice." Polzo, 209 N.J. at 67 (quoting N.J.S.A. 59:4-3(a)). However, "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (second alteration in original) (quoting

12

Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)).  Indeed, "[i]f failing to discover a dangerous defect on public property were the equivalent of creating the defect, the Legislature would have had no need to provide for liability based on actual or constructive notice."  Polzo, 209 N.J. at 67-68.  "Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a) and (b), not by whether [for example] 'a routine inspection program' by the [public entity] . . . would have discovered the condition."  Id. at 68.

In Carroll v. N.J. Transit, 366 N.J. Super. 380, 384 (App. Div. 2004), the plaintiff slipped on dog feces on the steps of a subway station and claimed a maintenance worker had been sweeping up garbage nearby at the time of the accident.  We held the plaintiff failed to establish constructive notice because, even assuming the defendant's employee was in the area, plaintiff failed to establish the condition existed for such a period of time that the defendant should have known of it.  Id. at 388.  We noted that the dog feces could have been on the steps "hours, minutes or seconds before the accident."  Ibid. (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 574 (App. Div. 1997)).  In addition, we found there was no evidence of any prior complaints from the public about the

13

presence of dog feces or other slippery substances at the location or a history of similar incidents.  Id. at 388-89.

We have considered plaintiff's contentions in the context of our de novo review and the applicable legal principles and conclude they are without merit. Summary judgment was appropriate because, even accepting plaintiff's contention the motion record created a factual question that the substance on the platform was a dangerous condition, there was no support for plaintiff's argument defendants had actual or constructive notice of it, or that their actions were palpably unreasonable.

First, the motion record is devoid of competent proofs, or reasonable inferences therefrom, that "the condition . . . existed for such a period of time and was of such an obvious nature that [defendants], in the exercise of due care, should have discovered the condition and its dangerous character."  See N.J.S.A. 59:4-3.  Indeed, there was no evidence in the record as to the amount of time the slippery substance was present prior to plaintiff's incident and the record does not indicate defendants received complaints about the condition that caused plaintiff's incident, or reports of similar conditions in the area.  Nor did plaintiff's expert report illuminate on the issue of how long the condition existed prior to plaintiff's fall.

14

Further, although it was undisputed it was raining on the day of plaintiff's incident, and the platform on which she fell was partially exposed, plaintiff testified she did not slip and fall specifically because of the rain or from a puddle of rainwater but on the slippery, foreign substance. And Detective Lee also stated that although the substance was "visible," it was "hard to see," but "if you looked closely, you could see there was something there." Based on the aforementioned undisputed facts, we are satisfied plaintiff failed to create a genuine and material factual question that defendants had actual or constructive notice of the dangerous condition – i.e., the slippery substance – that caused her fall.

Moreover, even if we accept plaintiff's contention that the court erred in failing to apply the heightened common carrier standard of care, having considered plaintiff's arguments, and reviewed the motion record under our de novo standard of review under that heightened standard, we are convinced summary judgment was warranted under that standard as well. [2] In doing so,

---

[2] There is no dispute that NJ Transit is a common carrier and owes its passengers a heightened standard of care. Maison, 245 N.J. at 286-87. While Maison imposes the heightened common carrier standard of care on NJ Transit buses and trains, the Maison court did not go so far as to impose that standard of care on NJ Transit for incidents occurring on their property in all circumstances. As Maison noted, with respect to dangerous conditions on public property, Chapter

however we note, that in <u>Mandal v. Port Auth. of N.Y. & N.J.</u>, we held the common carrier standard of care did not apply where the plaintiff in that case "fell in an underground corridor on her way to the train platform." 430 N.J. Super. 287, 292-93 (App. Div. 2013). We noted, "[i]f plaintiff was injured while riding a train or while embarking or disembarking from a train, the common-carrier standard of care might arguably apply." <u>Id.</u> at 293.

Here, plaintiff clearly stated she was walking on the platform and had yet to reach her destination when she slipped and fell on the foreign substance. Moreover, the record makes clear the train had yet to open its doors and no NJ Transit personnel were on the platform and she never testified at her deposition, nor stated in her discovery responses, she fell while in the process of boarding the train. Again, we need not resolve that issue because even if we were to extend <u>Mandal</u> to the facts before us, and conclude the heightened duty of care attached to plaintiff based on her presence on the platform, we are satisfied summary judgment was appropriate.

That heightened standard of care applicable to common carriers like NJ Transit requires them to exercise "the highest possible care consistent with the

---

Four of the TCA specifically addresses a public entity's liability and requires that the entity acted in a palpably unreasonable manner. <u>See</u> <u>id.</u> at 291 n.8.

A-2903-22

nature of the undertaking." Maison, 245 N.J. at 288 (quoting Harpell v. Pub. Serv. Coordinated Transp., 20 N.J. 309, 316-17 (1956)). Further, the common carrier "must exercise a high degree of care to protect its passengers from dangers that are known or are reasonably foreseeable." See Model Jury Charges (Civil), 5.73(A), "Carrier for Hire" (approved June 1988). As such, "although private and public common carriers must exercise a duty of care 'consistent with the nature of [their] undertaking,' they are not absolute guarantors of their passengers' safety and they cannot protect against all possible dangers." Maison, 245 N.J. at 297 (quoting Kinsey v. Hudson & Manhattan R.R. Co., 130 N.J.L. 285, 288 (Sup. Ct. 1943)); see also ibid. (explaining "had one of the teenagers unexpectedly thrown the bottle – in the absence of any provocative conduct or warning – defendants would not be liable under those circumstances").

The motion record is simply devoid of proofs creating a genuine and material question of fact that defendants failed to exercise a "high degree of care" to protect its passengers. Again, defendants did not have actual or constructive notice of the dangerous condition. They were not aware a slippery foreign substance was on the platform, when it was placed there, or under what circumstances. Nor was there evidence as to any similar instances occurring in the past. We also reiterate that the lack of cones or warnings does not create a

17

genuine and material factual question as plaintiff testified her fall was caused not by the rain, but by a foreign substance on the platform and no proof, expert or otherwise, supported the proposition that defendants were obligated to place cones and warnings on the platform to inform passengers that an unknown foreign substance could be present.

III.

In addition to proof of notice, to establish liability against a public entity under N.J.S.A. 59:4-2, a plaintiff must also establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable." Coyne, 182 N.J. at 493; N.J.S.A. 59:2-3(d). The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad, 176 N.J. at 195; see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (to constitute palpably unreasonable conduct, "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction." (quoting Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979))). Further, palpably unreasonable conduct "implies a more

obvious and manifest breach of duty" than negligence and "imposes a more onerous burden on the plaintiff." Williams, 171 N.J. Super. at 286.[3]

Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 130 (2001). However, a determination of palpable unreasonableness, "'like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented.'" Maslo, 346 N.J. Super. at 351 (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Id. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

Courts do "not have the authority or expertise to dictate to public entities the ideal form" of an inspection program for their often vast properties, "particularly given the limited resources available to them." Polzo, 209 N.J. at

---

[3] We acknowledge the court, in light of its conclusion plaintiff failed to establish defendants had actual or constructive notice of the dangerous condition, did not address the palpable unreasonable requirement. The parties, however, raised the issue before the trial court and have briefed it before us. Accordingly, for purposes of completeness and efficient review of all issues raised by the parties, we address it.

69. There, the Court stated it could not " find that the absence of a more systematic program violate[d] the [TCA], particularly when [the] plaintiff had not provided . . . any recognized standard of care that demands otherwise." Ibid.

Here, the record is barren of proof directly or circumstantially supporting the claim defendants acted in a palpably unreasonable manner in addressing the slippery substance on the platform that caused plaintiff's fall. As our Supreme Court has stated, New Jersey courts have neither the "the authority [nor] expertise" to instruct public entities how inspections should be carried out on their properties, "particularly given the limited resources available to them." Ibid. Even accepting as true, as we must, that defendants failed to place warning signs in the terminal on the day of the incident, as noted, plaintiff admitted she fell not on rainwater, but on a foreign substance and she failed to establish warning signs placed throughout the terminal due to rainfall would have prevented the incident. Nor did she present evidence that a more thorough inspection program of the vast terminal and platforms would have discovered the condition.

Moreover, as noted, Freire testified NJ Transit maintenance staff attend monthly safety meetings where they are reminded to report slippery conditions, place safety cones on any slipping hazards, and make sure there is no standing

20

water. Additionally, should NJ Transit maintenance staff encounter standing water, Freire testified they are instructed to squeegee the area. Under these circumstances, defendants' actions, or inactions, was not palpably unreasonable.

Finally, because plaintiff failed to demonstrate the court's decision granting summary judgment was contrary to the interests of justice, reconsideration was not warranted.[4] Any argument made by plaintiff that we have not expressly addressed is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We recognize the court applied the wrong standard in denying plaintiff's reconsideration motion as at the time of the hearing, defendants Port Authority of New York and New Jersey, City of Hoboken, and County of Hudson had not yet been dismissed. As such, the court should have reviewed the motion for reconsideration as an interlocutory order under Rule 4:42-2. The D'Atria standard cited by the court applies only to motions to alter or amend final judgments and orders and requires a plaintiff prove the court's decision was "based upon a palpably incorrect or irrational basis," or "that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." 242 N.J. Super. at 401. Under the Rule 4:42-2 standard, however, only "'sound discretion' and the 'interest of justice' guides the trial court . . . ." Lawson, 468 N.J. Super. at 134. Nevertheless, we are satisfied the court's decision was correct under the Rule 4:42-2 standard. See Ellison v. Evergreen Cemetery, 266 N.J. Super. 74, 78 (App. Div. 1993) ("[A]ppeals are taken from judgments, not from oral opinions or reasons. . . . [A]n order or judgment will be affirmed on appeal if it is correct, even though the judge gave the wrong reasons for it.").