**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1237-24

LISA M. JENKINS-MILLER and
COREY MILLER, wife and husband,

     Plaintiffs-Appellants,

v.

NEW JERSEY TRANSIT
CORPORATION, ALSTOM SA,
and HALLCON CORPORATION,

     Defendants-Respondents.

_____

Submitted March 2, 2026 — Decided March 25, 2026

Before Judges Sabatino and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0980-21.

Stark & Stark, PC, attorneys for appellants (J. Robert Bratman, of counsel and on the briefs; John C. Lowenberg, on the briefs).

Jennifer Davenport, Attorney General, attorney for respondents New Jersey Transit Corporation and Alstom, SA (Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Elizabeth Merrill, Deputy Attorney General, on the brief).

PER CURIAM

The evening of September 12, 2019 was marked by significant rainfall, when plaintiff[1] Lisa M. Jenkins-Miller slipped and fell on water pooled on the interior exit steps of defendant New Jersey Transit's ("NJT") River Line train in Camden, causing serious injuries to her ankle and leg. She instituted suit in the Law Division asserting negligence claims against NJT, defendant Alstom, SA ("Alstom"), the operations and maintenance contractor for NJT, and Hallcon Corporation ("Hallcon")[2], the cleaning subcontractor. After discovery concluded, the court granted defendants' motion for summary judgment and dismissed plaintiff's complaint with prejudice. Plaintiff appeals the summary judgment order, asserting several grounds of error by the trial court. Based on our de novo review of the record and the application of the legal standards set forth in Rule 4:46-2, we affirm.

---

[1] We refer to Lisa M. Jenkins-Miller as plaintiff throughout this opinion as her husband, Corey Miller's claims are per quod only.

[2] Plaintiff filed a voluntary dismissal as to Hallcon prior to the court's disposition of the summary judgment motions now on appeal.

## I.

The facts that follow are conveyed in a light most favorable to plaintiff, the non-moving party. Rule 4:46-2. On September 12, 2019, extensive rain began in Camden around 3:53 p.m. and intensified between 4:04 p.m. and 5:05 p.m., resulting in cumulative rainfall of over 2.3 inches with intermittent precipitation continuing later into the evening. NJT's control center daily log recorded train service in Camden was temporarily suspended due to "high water," at 4:53 p.m. and this suspension was not lifted until 5:27 p.m.

Transit operations and cleaning/maintenance for the River Line were conducted pursuant to contracts between NJT, Alstom, as operations and maintenance contractor, and Hallcon, as its cleaning subcontractor. Records indicate that regularly scheduled "Class A and C" interior cleanings occurred once per day, typically at the end-of-service or during significant layovers in servicing yards, not during active operation. Midday or "onboard" cleanings only occurred between 9:00 a.m. and 4:00 p.m. at terminal facilities, with no cleaning staff available from 4:00 p.m. to 8:00 p.m. There were no company procedures in place for responsive in-service cleaning or for hazard mitigation during weather events. The only in-service inspections involved the train

A-1237-24

engineer performing an undocumented visual inspection while changing ends at a terminal.

At approximately 5:45 p.m. on the day in question, plaintiff was a passenger on the River Line, traveling home from work. As she exited the train, she slipped and fell on the floor of the vestibule after descending two interior steps. She testified that the area where she slipped and fell was wet with what she described as "a lot of dirty water," which soaked her clothes and hands. Plaintiff stated that she could not see the floor from her seat before getting up to exit. She described the fall as happening fast but asserted it must have been caused by water because she was wet and clarified that it was not something originating from herself or other passengers.

On May 16, 2023, plaintiff initiated a personal injury action against NJT and Alstom, alleging negligence against both defendants. Plaintiff alleged injuries to her left ankle and leg, which required extensive medical care. Despite returning to her job, she asserts she continues to experience chronic pain, numbness, functional limitations causing her to miss work due to ongoing complications and surgeries.

After the close of discovery, NJ Transit and Alstom moved for summary judgment, contending plaintiff had not presented evidence demonstrating

defendants had actual or constructive notice of the water, as required by both the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to -12-3 ("TCA"), and common law negligence claims. Plaintiff opposed the motion, citing evidence in the record, video and surveillance logs and weather data.

Oral argument on the motion was held in May 2024. On November 18, 2024, the trial court granted summary judgment in favor of both NJ Transit and Alstom, dismissing plaintiffs' claims against both with prejudice. The trial court held that "there is no evidence in the record that either [NJT] or Alstom had actual notice of any dangerous condition on the train that would cause a passenger to slip and fall," and "[p]laintiff [] failed to prove that defendants had constructive notice of a dangerous condition in the form of water on the train floor." The court reasoned that:

> there was no proof in the record, expert or otherwise, that water had been present for such a period of time to have allowed for its discovery by Alstom or NJT, or was so obvious that defendants should have discovered it. There was also no evidence concerning the source of the water, or of any River Line passengers having slipping problems due to water during prior rain events or at any other time. Consequently, the court is convinced that no reasonable jury could conclude that NJT and Alstom had actual or constructive notice of a dangerous condition on the train in a sufficient time prior to plaintiff's injury to have taken measures to protect against it.

5

Additionally, the trial court rejected plaintiff's argument that the mode of operation rule applied, obviating her need to prove notice, and found defendant NJT's conduct was not palpably unreasonable. However, the trial court also ruled that, unlike NJ Transit, Alstom was not covered by the TCA because it was not a government entity.

On appeal, plaintiff contends NJT and Alstom had constructive notice of the dangerous water pooling condition because: (1) surveillance footage from the train shows "a sheen of water across the floor and pooled areas at the raised landing exactly where [she] fell;" and (2) "the Daily Log . . . shows a system alert was issued at 4:53 p.m. for high water." Plaintiff further contends defendants were negligent because there was no verified inspection between 4:00 p.m. and 9:00 p.m. Based on those arguments, plaintiff claims "a reasonable inference that water had accumulated during an hours-long storm and would have been discovered through a basic inspection" and thus, the trial court should have accepted that "the water had been present for a sufficient duration to be noticed." Plaintiff also contends that notice to defendants was not required based on the mode of operation rule.[3]

---

[3] Plaintiff also asserted the trial court was correct in determining Alstom was not covered by the TCA. Since neither defendant has challenged the court's

A-1237-24

II.

When reviewing an order granting or denying summary judgment, we apply the standard under Rule 4:46-2(c) applied by the trial court when ruling on the motion. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment should be granted when the evidence before the court "show[s] that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

The motion court must determine facts in the light most favorable to the party opposing summary judgment. Igdalev, 225 N.J. at 479. However, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact for purposes of Rule 4:46-2." Brill v. Guardian Life Ins. Co. of

determination of that issue on appeal, we do not address that issue. A party to an appeal must have a sufficient stake in—that is, must be legally aggrieved by—the decision of the lower tribunal to maintain a legal position before the appellate court. See e.g. Calabro v. Campbell Soup Co., 244 N.J. Super. 149, 169 (App. Div. 1990) ("Only a party aggrieved by a judgment may appeal therefrom"); In re Atlantic City, 3 N.J. Super. 62, 63 (App. Div. 1949) ("The rule is fundamental that only a person aggrieved is permitted to appeal from an order or judgment of a court"). Plaintiff was not aggrieved by the court's favorable decision finding the TCA was inapplicable to Alstom, and Alstom has not cross-appealed.

Am., 142 N.J. 520, 540 (1995). Thus, the trial court should grant summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A.

We first address plaintiff's claims that both NJT and Alstom had actual and constructive notice of the dangerous condition because the surveillance footage shows the pooled water and the log kept by NJT showed a system alert for high water was entered prior to plaintiff's fall.

The TCA confers a presumption of immunity "from tort liability [on public entities such as NJT] unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2002) (citing Collins v. Union County Jail, 150 N.J. 407, 413 (1997)). "Under the TCA, immunity is the rule and liability is the exception." Posey v. Bordentown Sewerage Auth., 171 N.J. 172, 181 (2002). Thus, "a public entity is 'immune from tort liability unless there is a specific statutory provision' that makes it answerable for a negligent act or omission." Polzo v. Cnty. of Essex, 209 N.J. 51, 65 (2012) (quoting Kahrar, 171 N.J. at 10); see also N.J.S.A. 59:2-1(a) ("Except as otherwise provided by [the TCA], a public entity is not liable for an

injury, whether such injury arises out of an act or omission of the public entity . . . ."). Under the TCA, a public entity has a duty of care different from "that . . . owed under the negligence standard." Polzo, 209 N.J. at 76; see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 460 (2009).

The TCA allows imposition of tort liability against public entities for injuries caused by conditions of their property but only based on limited circumstances. N.J.S.A. 59:4-2. The foregoing statute imposes tort liability only where it is established: (1) the public entity's "property was in dangerous condition at the time of the injury"; (2) "the injury was proximately caused by the dangerous condition"; (3) "the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred"; and (4) "a negligent or wrongful act or omission of [a public] employee . . . created the dangerous condition" or "a public entity had actual or constructive notice of the dangerous condition[.]" Ibid.; see also Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 124-25 (2001). In addition, a public entity is not liable for a dangerous condition of its property "if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable." N.J.S.A. 59:4-2.

Pursuant to N.J.S.A. 59:4-3(a), actual notice exists when the defendant had knowledge of the condition and knew or should have known of its dangerous character. Constructive notice exists when the condition existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. N.J.S.A. 59:4-3(b); see Chatman v. Hall, 128 N.J. 394, 418 (1992) (explaining the length of time during which an alleged dangerous condition existed as well as its alleged size create a reasonable inference that the defendant public entity had either actual or constructive notice of the condition).

As to private entities such as Alstom, similar elements to the notice provisions of the TCA are required. The necessary elements for a slip and fall negligence claim of a business invitee are well established. A plaintiff must prove by a preponderance of the evidence: (1) defendant's actual or constructive notice of a dangerous condition; (2) lack of reasonable care by defendant; (3) proximate causation of plaintiff's injury; and (4) damages. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 434 (1993). We have also held "[t]he mere '[e]xistence of an alleged dangerous condition is not constructive notice of it.'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (citation omitted). Plaintiff does not, however, need to

10

prove that Alstom, a private entity, was "palpably unreasonable." Similar to the constructive notice requirement for public entities under the TCA, private entities would have constructive knowledge of a dangerous condition "when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" Troupe v. Burlington Coat Factory Warehouse Corp., 443 N.J. Super. 596, 602 (App. Div. 2016) (quoting Parmenter v. Jarvis Drug Stores, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957)).

Based on our review of the record, we conclude plaintiff's contention that NJT had actual notice of the alleged dangerous condition lacks sufficient merit to warrant discussion in a written opinion and we affirm the trial court's determination related to this issue. R. 2:11-3(e)(1)(E). We add only that the sole basis of plaintiff's claim that defendants had actual notice was based on the "high water" entry contained in NJT's Log. We conclude this fact does not create any genuine issue of material fact that the defendants were provided actual notice of the dangerous pooled water condition on the train, which is required element to show actual notice to defendants. The high-water entry in the log does not, in and of itself, provide notice of the pooled water condition on the train necessary to prove actual notice under the TCA or common law.

A-1237-24

Concerning constructive notice, plaintiff contends the existence of "visible pooling" of water on the video, the Daily Log entries, and the absence of any verifiable post-4:00 p.m. inspection procedures create a triable issue of fact that constructive notice existed. We are not persuaded by these arguments.

We conclude, as did the trial court, that plaintiff failed to show genuine issues of material fact existed in the record providing defendants had constructive notice of the alleged dangerous water pooling condition. The surveillance footage relied upon by plaintiff is timestamped at 5:43 p.m., almost the exact time when plaintiff slipped and fell. We conclude plaintiff's reliance on evidence that water was present for such a short period of time before her fall fails to provide constructive notice.

Plaintiff also asserts the "high water" entry to defendants provided constructive notice. We disagree. As we determined in our analysis concerning actual notice, the "high water" entry, even when providing all favorable inferences to plaintiff, does not provide a sufficient nexus between the notification and when the water pooled on the interior steps of the train proving constructive notice to defendants.

We now address plaintiff's contention that a notice should be "imputed" to Alstom due to their failure to conduct reasonable inspections that would have

12

discovered the dangerous condition. In support of this contention, plaintiff cites to <u>Nisivoccia v. Glass Gardens, Inc.</u>, 175 N.J. 559, 563 (2003).

We conclude <u>Nisivoccia</u> does not stand for the above proposition argued by plaintiff as its holding concerned the mode of operation rule. Regardless, the trial court properly determined plaintiff's claims against Alstom under a negligent inspection theory failed because expert opinion was required to support such. Concerning this issue, the court stated:

> Plaintiff also failed to present any expert evidence to suggest that Alstom and NJT should have taken any different steps than they did to inspect and maintain the trains.
>
> . . . .
>
> Plaintiff has also not demonstrated that there is any industry standard that Alstom and NJT failed to meet when establishing their program for the inspection and maintenance of trains. Nor has plaintiff shown that its suggested additional steps would have resulted in a timely discovery of a potential danger.
>
> . . . .
>
> Absent expert or other evidence on the issue, the court is unable to determine whether plaintiff's "small additional measures" [to inspect the trains] were required.

Expert testimony is required when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid

judgment as to whether the conduct of the party was reasonable." Butler v. Acme Markets, Inc., 89 N.J. 270, 283 (1982); Phillips v. Gelpke, 190 N.J. 580, 591 (2007). Where a layperson's common knowledge is not competent to supply the standard for measuring the defendant's conduct, expert testimony is required to establish the requisite standard of care. See Davis v. Brickman Landscaping, 219 N.J. 395, 407 (2014).

We concur with the trial court's determination that expert opinion setting forth the applicable standard of care and how the defendant's inspection procedures failed to satisfy that standard is required. Without such testimony, plaintiff's negligent inspection claims must fail.

Because we have determined NJT did not have actual or constructive notice of the dangerous water pooling condition on the steps of its train, we deem the plaintiff's challenge to the trial court's determination that NJT was not palpably unreasonable to be moot.

B.

We now turn to plaintiff's contention that notice to NJT or Alstom was not required to prove notice based on the "mode of operation" rule. If the mode of operation rule applies, a plaintiff need not establish notice. Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 564-65 (2003). The mode of operation "rule is a

14

very limited exception to the traditional rules of business premises liability affording the plaintiff an inference of negligence where the proprietor of a business could reasonably anticipate that hazardous conditions would regularly arise simply from the operator's method or manner of doing business." Carroll v. N.J. Transit, 366 N.J. Super. 380, 389 (App. Div. 2004) (citing Nisivoccia, 175 N.J. at 559).

To invoke the doctrine, a plaintiff must prove that the dangerous condition arose from the business's self-service operation. Prioleau v. Kentucky Fried Chicken, Inc., 223 N.J. 245, 260 (2015) (citing Nisivoccia, 175 N.J. at 563-66). "The dispositive factor is . . . whether there is a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." Id. at 262. The doctrine will not apply where there is no evidence "the location in which [the] plaintiff's accident occurred . . . bears the slightest relationship to any self-service component of [the] defendant's business." Id. at 264.

In determining whether the mode of operation doctrine is applicable, courts must examine "the self-service nature of the defendant's business." Prioleau, 223 N.J. at 260 (citing Nisivoccia, 175 N.J. at 563-66). The mode of operation rule "has never been expanded beyond the self-service setting, in

which customers independently handle merchandise without the assistance of employees or may come into direct contact with product displays, shelving, packaging, and other aspects of the facility that may present a risk" and "is not a general rule of premises liability . . . ." Id. at 262. While the injury must occur in an area affected by the self-service operation, liability may be based upon "the negligence of employees" or "the carelessness of patrons" who cause the dangerous condition. Id. at 260-61.

Importantly, "the mode of operation rule has no application to a public entity whose liability for maintaining a dangerous condition is rigidly confined to situations where, among other requirements, the public entity . . . was actually or constructively aware of its existence." Carroll, 366 N.J. Super. at 390.

Based on the above legal principles, it is clear that the mode of operation rule does not apply to NJT as a matter of law because it is a public entity protected by the TCA, and it was not actually or constructively noticed as previously determined. We further conclude the doctrine is equally not applicable to Alstom. As we previously noted, the rule is limited to self-service businesses with hazardous conditions regularly occurring as a result of the business, and there must be a sufficient nexus between the self-service component and the nature of the injury. No genuine factual issues exist showing

16

Alstom's cleaning services are self-service in nature or that the steps in the train are in an area affected by any self-service operation. We conclude plaintiff's mode of operation argument lacks merit and was properly denied by the trial court.

To the extent we have not addressed any of defendant's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1237-24